Ira Walton DREW et al., Plaintiffs, and
Marshall J. Seidman, Intervening Plaintiff,
v.
William W. SCRANTON et al., Defendants.
Michael JOHNSON et al., Plaintiffs,
v.
George I. BLOOM, Defendant.
Civ. A. Nos. 8293, 8338.

United States District Court
M. D. Pennsylvania.
April 9, 1964.
As Amended April 14 and June 17, 1964.

312

Goncer M. Krestal, and Marvin Comisky, of Blank, Rudenko, Klaus & Rome, Philadelphia, Pa., Joseph Mullaney, Scranton, Pa., for plaintiffs Ira Walton Drew and others.

Raymond Sobota, Wilkes-Barre, Pa., Walter E. Alessandroni, Atty. Gen., of Pennsylvania, Harrisburg, Pa., for defendants.

Marshall J. Seidman, Philadelphia, Pa., pro se.

Thomas D. McBride and Bernard M. Borish, of Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for plaintiffs Michael Johnson and others.

Before MARIS, Circuit Judge, and SHERIDAN and NEALON, District Judges.

MARIS, Circuit Judge.

Ira Walton Drew of Philadelphia, J. Claude Bowen of Bucks County, John B. McCrea of Montgomery County, Irving Kaufman of Delaware County, and Jean McCoskey of Luzerne County, taxpayers and voters of the Commonwealth of Pennsylvania, on November 22, 1963 brought civil action No. 8293 against the Governor, the Secretary of the Common-wealth, the Attorney General, the President of the Senate, the President pro tempore of the Senate and the Speaker of the House of Representatives of the Commonwealth to restrain the defendants from conducting any primary or general election for members of the General Assembly in accordance with the apportionment required by the alleged unconstitutional provisions of Article II, Sections 16, 17 and 18, of the State constitution, P.S., or any statute enacted pursuant thereto, to enjoin the enactment and enforcement of legislation being considered by a special session of the General Assembly of the Commonwealth for the reapportionment of the membership of the Senate and House of Representatives, and to require the defendants and the members of the Senate and House of Representatives of the General Assembly to enact legislation which would apportion the senatorial and representative districts in such manner as would not deprive the plaintiffs and others similarly situated of the equal protection of the laws. Thereafter, Marshall J. Seidman of Montgomery County, a taxpayer and voter of the Commonwealth, intervened as a plaintiff and Donald C. Rubel and Anne D. McKinley of Philadelphia, taxpayers and voters, intervened as defendants. Subsequently the intervening defendants were on their motion permitted to withdraw from the action.

This court of three judges was constituted under 28 U.S.C. §§ 2281, 2284, and on December 4, 1963 heard plaintiffs' application for a temporary injunction to restrain the enactment of the reapportionment legislation then pending in the General Assembly. On December 9, 1963 the application was denied as premature, without prejudice to the plaintiffs' right to seek relief on final hearing with respect to the apportionment statutes which might then be in effect. D.C., 229 F.Supp. 308. Thereafter, the General Assembly passed and the Governor approved two reapportionment bills, the Act of January 9, 1964, No. 1, which fixed the number of representatives at

209 and apportioned the state into representative districts, and the Act of January 9, 1964, No. 2, which apportioned the state into 50 senatorial districts.

On January 15, 1964 Michael Johnson of Montgomery County, Harry Block of Philadelphia, Henry P. Groton of Delaware County, Eugene Joseph Considine of Luzerne County and Frederick Blair Hughes of Clearfield County, voters and taxpayers of the Commonwealth, filed civil action No. 8338 against the Secretary of the Commonwealth to declare the two Acts of January 9, 1964 unconstitutional and invalid and to enjoin the defendant from performing the duties imposed upon him by the Pennsylvania Election Code in connection with the holding of primary and general elections pursuant to those acts. The complaint asked the court to retain jurisdiction of the cause until such time as the General Assembly is apportioned in such manner as not to deprive plaintiffs of the equal protection of the laws. On motion of the plaintiffs in No. 8338 that action was consolidated with civil action No. 8293.

A final hearing of the consolidated actions on their merits was held on January 16 and 17, 1964, the evidence taken at the hearing on December 4, 1963 being incorporated into the record of the final hearing. Oral testimony was taken and much documentary evidence was received. The cases are now ready for decision, the court having carefully considered the evidence, the requests for findings of fact and conclusions of law and the able and exhaustive briefs which counsel have filed.

The plaintiffs contend that the two reapportionment Acts of January 9, 1964 deny them the equal protection of the laws guaranteed by the Fourteenth Amendment to the federal constitution. They assert that in allotting representation in the Senate and the House of Representatives the acts discriminate against the more populous counties in favor of the less populous ones. This is unconstitutionally invidious, they say, because it amounts to discrimination against one class of voters, the large city and suburban dwellers who are mostly found in the more populous counties, and in favor of another, the rural voters who mostly reside in the less populous counties. It is clear that we have jurisdiction to entertain these suits and to determine the questions thus raised. Baker v. Carr, 1962, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663.

We consider first the senatorial reapportionment act. Section 16 of Article II of the Pennsylvania constitution, which relates to senatorial districts, provides:

"The State shall be divided into fifty senatorial districts of compact and contiguous territory as nearly equal in population as may be, and each district shall be entitled to elect one Senator. Each county containing one or more ratios of population shall be entitled to one Senator for each ratio, and to an additional Senator for a surplus of population exceeding three-fifths of a ratio, but no county shall form a separate district unless it shall contain four-fifths of a ratio, except where the adjoining counties are each entitled to one or more Senators, when such county may be assigned a Senator on less than four-fifths and exceeding one-half of a ratio; and no county shall be divided unless entitled to two or more Senators. No city or county shall be entitled to separate representation exceeding one-sixth of the whole number of Senators. No ward, borough or township shall be divided in the formation of a district. The senatorial ratio shall be ascertained by dividing the whole population of the State by the number fifty."

The 1960 census determined the population of Pennsylvania to be 11,319,366. Dividing this figure by 50 gives a senatorial ratio of 226,387. One-half of a ratio is 113,193 and three-fifths is 135,832. Admittedly, following the directions of the Pennsylvania constitution

and applying the senatorial ratio of 226,-387, Act No. 2 of January 9, 1964 apportions the State into senatorial districts as follows:

| District No. | County | 1960 Population | No. of Senators |
|---|---|---|---|
| County with population of more than 8⅗ ratios | | | |
| 1 | Philadelphia (part) | 260,767 | 1 |
| 2 | Philadelphia (part) | 255,869 | 1 |
| 3 | Philadelphia (part) | 251,415 | 1 |
| 4 | Philadelphia (part) | 241,032 | 1 |
| 5 | Philadelphia (part) | 236,148 | 1 |
| 6 | Philadelphia (part) | 242,667 | 1 |
| 7 | Philadelphia (part) | 266,242 | 1 |
| 8 | Philadelphia (part) | 248,372 | 1 |
| | | 2,002,512 | 8 |
| County with population of more than 7 but less than 7½ ratios | | | |
| 37 | Allegheny (part) | 235,125 | 1 |
| 38 | Allegheny (part) | 233,003 | 1 |
| 40 | Allegheny (part) | 241,633 | 1 |
| 42 | Allegheny (part) | 226,269 | 1 |
| 43 | Allegheny (part) | 237,367 | 1 |
| 44 | Allegheny (part) | 233,086 | 1 |
| 45 | Allegheny (part) | 222,104 | 1 |
| | | 1,628,587 | 7 |
| Counties with population of more than 2 but less than 2½ ratios | | | |
| 9 | Delaware (part) | 255,888 | 1 |
| 26 | Delaware (part) | 297,266 | 1 |
| 12 | Montgomery (part) | 262,794 | 1 |
| 17 | Montgomery (part) | 253,888 | 1 |
| | | 1,069,836 | 4 |
| Counties with population of more than 1½ but less than 1⅗ ratios | | | |
| 39 | Westmoreland | 352,629 | 1 |
| 20 | Luzerne | 346,972 | 1 |
| | | 699,601 | 2 |
| Counties with population of more than 1 but less than 1½ ratios | | | |
| 10 | Bucks | 308,567 | 1 |
| 13 | Lancaster | 278,359 | 1 |
| 11 | Berks | 275,414 | 1 |
| 49 | Erie | 250,682 | 1 |
| 28 | York | 238,336 | 1 |
| 22 | Lackawanna | 234,531 | 1 |
| 16 | Lehigh | 227,536 | 1 |
| | | 1,813,425 | 7 |

| District No. | County | 1960 Population | No. of Senators |
|---|---|---|---|

Counties with population of more than ⅘ but less than 1 ratio

| District No. | County | 1960 Population | No. of Senators |
|---|---|---|---|
| 15 | Dauphin | 220,255 | 1 |
| 46 | Washington | 217,271 | 1 |
| 19 | Chester | 210,608 | 1 |
| 47 | Beaver | 206,948 | 1 |
| 35 | Cambria | 203,283 | 1 |
| 18 | Northampton | 201,412 | 1 |
| | | 1,259,777 | 6 |

Districts comprised of counties with population of less than ⅘ ratio

| District No. | County | 1960 Population | No. of Senators |
|---|---|---|---|
| 29 | Schuylkill, Lebanon | 263,880 | 1 |
| 21 | Butler, Lawrence | 227,604 | 1 |
| 31 | Mifflin, Juniata, Perry, Cumberland | 211,620 | 1 |
| 32 | Fayette, Greene | 208,764 | 1 |
| 50 | Mercer, Crawford | 205,475 | 1 |
| 41 | Jefferson, Armstrong, Indiana | 201,682 | 1 |
| 24 | Columbia, Lycoming, Montour | 179,586 | 1 |
| 30 | Blair, Huntingdon | 176,727 | 1 |
| 25 | Potter, McKean, Warren, Clinton, Cameron | 161,787 | 1 |
| 34 | Centre, Clearfield | 160,114 | 1 |
| 27 | Northumberland, Snyder, Union | 155,706 | 1 |
| 23 | Bradford, Susquehanna, Tioga, Wyoming, Sullivan | 147,740 | 1 |
| 48 | Elk, Forest, Clarion, Venango | 144,516 | 1 |
| 33 | Franklin, Adams | 140,078 | 1 |
| 36 | Bedford, Fulton, Somerset | 130,498 | 1 |
| 14 | Carbon, Monroe, Pike, Wayne | 129,851 | 1 |
| | | 2,845,628 | 16 |
| | Grand Total | 11,319,366 | 50 |

Examining the foregoing tabulation with the statewide senatorial ratio of 226,387 in mind a general pattern of under-representation of the more populous counties and over-representation of those which are less populous appears, as is shown by the following table in which the counties are listed in order of their population:

| Counties | No. of Senators | Average Population Per Senator |
|---|---|---|
| Philadelphia | 8 | 250,314 |
| Allegheny | 7 | 232,655 |
| Delaware and Montgomery | 4 | 267,459 |
| Westmoreland and Luzerne | 2 | 349,800 |
| Bucks, Lancaster, Berks, Erie, York, Lackawanna and Lehigh | 7 | 259,060 |
| Dauphin, Washington, Chester, Beaver, Cambria and Northampton | 6 | 209,963 |
| 48 remaining counties, each with a population of less than 181,110 (⅘ of a senatorial ratio) | 16 | 177,851 |
| Entire State | 50 | 226,387 |

The constitutional standard of equal protection of the laws in the area of legislative representation has been expressed in the phrase "one man—one vote"[1]. This standard is embedded in the Pennsylvania constitutional provision here involved which requires that the fifty senatorial districts shall be "as nearly equal in population as may be". It must be conceded that exact equality in population is impossible and with the constant movement of our people would not continue to exist even if it were to be achieved on a given census date. The prohibition against dividing counties unless they are entitled to two or more senators would alone prevent the creation of districts of absolutely equal population. And so variations from the norm have been widely accepted as permissible if they occur at random and are not designed to discriminate against particular classes or groups of voters. But when the variations from the norm fit into a pattern of discrimination against the voters living in particular areas, as they do here, the people of the large metropolitan counties where the city and suburban voters dwell being denied their equal share of representation in the Senate, and the people of the less populous counties largely inhabited by rural voters being given much more than their equal share of such representation, they must be held to involve discrimination. When it appears, as it does, that the 13 most populous counties of the State are all under-represented and that 50 of the 54 less populous counties are over-represented, 28 of them by more than 25%, the conclusion is inescapable that such discrimination was deliberate and invidious

1. Wesberry v. Sanders, 1964, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481; Scholle v. Hare, Secretary of State, 1962, 367 Mich. 176, 116 N.W.2d 350; Sincock v. Duffy, D.Del.1963, 215 F.Supp. 169; Butterworth v. Dempsey, D.Conn.1964, 229 F. Supp. 754; See also Advisory Commission on Intergovernmental Relations, Report on Apportionment of State Legislatures, Dec. 1962, p. 67; One Man—One Vote, a statement of basic principles of legislative apportionment, Twentieth Century Fund, 1962.

in violation of the Fourteenth Amendment.[2]

The basis for this discrimination, as might be expected in the case of a statute which, as we have said, complies with the mandates of the Pennsylvania constitution, is to be found in that document. The plaintiffs point to three of the provisions of Section 16 of Article II quoted above, which they say compel this discrimination. The first is the provision that no city or county, regardless of its population, shall be entitled to more than 8 senators. The continuous effect of this provision since its adoption in 1873 has been to deprive the people of the city and county of Philadelphia of one or more senators to which its population would otherwise have entitled them under each decennial census since 1870. Under the 1960 census Philadelphia has a population in excess of eight and three-fifths senatorial ratios and is accordingly entitled to nine senators except for this limiting provision.

The second provision of Section 16 which is asserted to discriminate against the people of the larger counties and in favor of those of the smaller ones is the limitation that a county containing one or more ratios of population may have an additional senator for a surplus of population over its full ratios only if that surplus exceeds three-fifths of a ratio. This provision, obviously, applies only to the most populous counties, under the 1960 census the 13 largest, and its inevitable effect is to reduce the number of senators which would be allotted to the larger counties if apportionment according to the more equitable rule of major fractions, the rule applied by Section 17 of Article II to the apportionment of representatives (except as to the larger counties), had been applied. Thus, by the present statute Westmoreland and Luzerne counties are each allotted one senator since neither county has one and three-fifths ratios, although each has more than one and one-half ratios and would be entitled to two senators under the rule of major fractions. By reason of the application of this constitutional provision each loses a senator to which it would be entitled under the application of the ordinary rule of major fractions.

The three additional senators to which Philadelphia, Westmoreland and Luzerne would appear to be entitled under the basic mandate of Section 16 of Article II of the Pennsylvania constitution for senatorial districts of substantially equal population are thus taken from the people of those counties by the two restrictive provisions under discussion and are necessarily, under the other provisions of Section 16, allotted to the people of the 48 counties having a population of less than four-fifths of a ratio (181,110), being the counties in which the bulk of the rural population of the State resides. The result is, inevitably, a great over-representation in the Senate of most of these counties. Two examples will suffice to show how disproportionate is the resulting representation. The 20th senatorial district, comprising densely populated largely urban and industrial Luzerne County, has 346,629 people, 53% in excess of the ratio for one senator, while the adjoining 14th district, comprising Carbon, Monroe, Pike and Wayne counties, largely rural, has a population of only 129,851, 42% less than a senatorial ratio. Likewise, the 39th district, comprising populous industrial Westmoreland County, has a population of 352,629, 56% in excess of the senatorial ratio, while the 36th district which adjoins it, consisting of predominately rural and agricultural Bedford, Fulton and Somerset counties, has a population of only 130,498, 42% below the ratio for one senator. While these are the most striking examples of disparity, the tables which we have set out above show that they are but instances of a general pat-

2. Moss v. Burkhart, W.D.Okla.1962, 207 F.Supp. 885; Mann v. Davis, E.D.Va. 1962, 213 F.Supp. 577; Sincock v. Duffy, D.Del.1963, 215 F.Supp. 169; Davis v. Synhorst, S.D.Ia.1963, 217 F.Supp. 492; Butterworth v. Dempsey, D.Conn. 1964, 229 F.Supp. 754.

tern of discrimination in representation against the urban and suburban areas and in favor of the rural areas of the State.

If the three senatorial seats to which we have referred were to be allotted to Philadelphia, Westmoreland and Luzerne instead of to the 48 smallest rural counties of the State, as the present act does, the present imbalance of representation would be almost entirely eliminated, although still leaving those 48 counties slightly over-represented. The following table gives the figures:

| Counties | No. of Senators | Average Population Per Senator |
|---|---|---|
| Philadelphia, Allegheny, Delaware, Montgomery, Westmoreland, Luzerne | 24 | 225,022 |
| 13 next most populous counties | 13 | 236,400 |
| 48 least populous counties | 13 | 218,894 |
| Entire State | 50 | 226,387 |

That an equitable apportionment of 13 senators among the 48 least populous counties is feasible is demonstrated by the possible arrangement outlined in the following table:

| District | Counties | Population |
|---|---|---|
| 14 | Carbon, Monroe, Pike, Wayne, Susquehanna, Wyoming and Sullivan | 186,052 |
| 21 | Butler and Lawrence | 227,604 |
| 24 | Lycoming, Tioga and Bradford | 200,906 |
| 27 | Columbia, Montour, Northumberland, Snyder and Union | 225,925 |
| 29 | Lebanon and Schuylkill | 263,880 |
| 30 | Blair, Huntingdon and Mifflin | 221,075 |
| 31 | Adams, Cumberland, Perry and Juniata | 219,178 |
| 32 | Greene and Fayette | 208,764 |
| 34 | Clearfield, Centre, Clinton, Cameron and Potter | 221,802 |
| 36 | Franklin, Fulton, Bedford and Somerset | 218,670 |
| 41 | Armstrong, Clarion, Indiana and Jefferson | 239,090 |
| 48 | Elk, Forest, McKean, Venango and Warren | 207,207 |
| 50 | Crawford and Mercer | 205,475 |
| | | 2,845,628 |

It seems clear from the debates in the convention which produced the present Pennsylvania constitution that the provisions restricting representation of the more populous counties were the product of an agrarian philosophy which held that the inhabitants of the rural areas were more to be trusted with the responsibilities of government than the population of the cities, which contained a greater proportion of wicked and irresponsible men, as was said to be well known.[3] The defendants concede that the desire to protect the rural voters from domination by urban majorities was the basis for these restrictive provisions and they urge their validity. We think, however, that they are but the vestigial remnants of an undemocratic philosophy of an earlier age, and that they cannot stand against the mandate of the Fourteenth Amendment that all persons, and not rural dwellers only, shall be given the equal protection of the laws.[4]

■ The third provision of Section 16 of Article II of the Pennsylvania constitution which the plaintiffs assert compels discrimination against the more populous counties is the requirement that counties may not be divided in forming senatorial districts except when they are entitled to two or more senators. With this contention of the plaintiffs we cannot agree. On the contrary, we think, as do the defendants, that there is a rational basis for respecting county lines in this regard and that the disparities in representation from the normal ratio which compliance with this requirement produces are random and not invidiously discriminatory, provided that the larger counties are allotted, as we think they must be, one senator for each full ratio

and an additional senator for any surplus of population exceeding one-half a ratio. We do not mean to suggest, nor does the Pennsylvania constitution, that counties should be given equal representation in the Senate or that the so-called federal analogy is applicable. But it nonetheless remains true that counties in Pennsylvania have from early colonial times been political and governmental units in which the voters have acted together both in elections and in many other ways. Counties have formed units for the organization and activities of political parties and of many other kinds of citizens' associations. It is doubtless the fact, as the plaintiffs urge, that the cities, boroughs, townships and school districts within the counties loom larger in the public mind in local government than do the counties. But it remains true, we believe, that the bulk of the people of a Pennsylvania county have a definite community of interest which they do not share with the people of other counties, even adjoining ones. To fractionize counties by including *parts* of two or more in a single district would, we think, probably result in greater harm by way of confusing the voters accustomed to acting politically in their own county or its subdivisions, than in the good it might do in bringing about a theoretically more perfect equality of representation. However, if a blind adherence to this county unit principle would create a situation in which invidious discrimination would exist unless a county is divided, the county unit principle may well have to give way to the mandate of the Fourteenth Amendment. The evidence before us does not convince us that such a situation now exists.[4½] Nor does the

---

3. White, Commentaries on the Constitution of Pennsylvania, 1907, p. 195.

4. Wesberry v. Sanders, 1964, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481.

4½. We note, however, that the necessity of meeting such a situation by attaching a part of one county to another county for senatorial purposes has been recognized by the General Assembly of Pennsylvania in the past, apparently without question.

In any event for a period of 58 years from 1906 to 1964, under the Acts of February 17, 1906, P.L. 31, and May 10, 1921, P.L. 449, the 17th Senatorial District comprised the county of Lebanon and a portion of the county of Lancaster, while the 13th District comprised the remainder of the county of Lancaster. Senators were regularly elected from these two districts and served without contest so far as we are aware.

evidence require us, in the case of senatorial apportionment, to hold that the county unit principle must be extended to the point of allotting a senator to each county having less than four-fifths but more than one-half a ratio. The Pennsylvania Constitution does not contemplate this but, on the contrary, requires that such counties, unless entirely surrounded by counties entitled to one or more senators, shall be joined with other counties in forming senatorial districts. Since this procedure tends to produce senatorial districts more closely approximating the senatorial ratio than if such below-ratio counties were set up as separate districts, it obviously does not run afoul of the Fourteenth Amendment.

■■ We conclude that the Act of January 9, 1964, No. 2, which provided for senatorial reapportionment, violates the Fourteenth Amendment in denying to Philadelphia, Westmoreland and Luzerene Counties one additional senator each and in allotting those three senators to the less populous counties of the State. To the extent that Sections 16 and 18 [5] of Article II of the Pennsylvania constitution appear to compel this result they may not be regarded as mandatory [6] upon the General Assembly of the Commonwealth which is bound to comply with the equal protection clause of the Fourteenth Amendment to the federal constitution as the supreme law of the land.[7]

We turn then to consider the Act of January 9, 1964, No. 1, which reapportions the members of the House of Representatives of the Commonwealth and fixes representative districts. Section 17 of Article II of the State constitution which regulates this apportionment provides:

"The members of the House of Representatives shall be apportioned among the several counties, on a ratio obtained by dividing the population of the State as ascertained by the most recent United States census by two hundred. Every county containing less than five ratios shall have one representative for every full ratio, and an additional representative when the surplus exceeds half a ratio; but each county shall have at least one representative. Every county containing five ratios or more shall have one representative for every full ratio. Every city containing a population equal to a ratio shall elect separately its proportion of the representatives allotted to the county in which it is located. Every city entitled to more than four representatives, and every county having over one hundred thousand inhabitants shall be divided into districts of compact and contiguous territory, each district to elect its proportion of representatives according to its population, but no district shall elect more than four representatives."

The ratio for representatives under the 1960 census is 56,597 (11,319,366 divided by 200). One-half a ratio is 28,298. In accordance with these constitutional requirements and applying this representa-

5. Section 18 of Article II of the Pennsylvania constitution provides:
   "The General Assembly at its first session after the adoption of this Constitution, and immediately after each United States decennial census, shall apportion the State into senatorial and representative districts agreeably to the provisions of the two next preceding sections."

6. It may well be that in the light of the Fourteenth Amendment, which was in force when the present Pennsylvania constitution was adopted, these provisions should be construed as directory only.

7. Sims v. Frink, M.D.Ala.1962, 208 F. Supp. 431; Valenti v. Dempsey, D.Conn. 1962, 211 F.Supp. 911; Sincock v. Duffy, D.Del.1963, 215 F.Supp. 169; Butterworth v. Dempsey, D.Conn.1964, 229 F. Supp. 754.

tive ratio, Act of January 9, 1964, No. 1, 209 and allotted them to the counties as fixed the number of representatives at follows:

| County | Population | No. of Representatives |
|---|---|---|
| County with population of more than 35 but less than 35½ ratios | | |
| Philadelphia | 2,002,512 | 35 |
| County with population of more than 28½ but less than 29 ratios | | |
| Allegheny | 1,628,587 | 28 |
| County with population of more than 9½ but less than 10 ratios | | |
| Delaware | 553,154 | 9 |
| County with population of more than 9 but less than 9½ ratios | | |
| Montgomery | 516,682 | 9 |
| Counties with population of more than 6 but less than 6½ ratios | | |
| Westmoreland | 352,629 | 6 |
| Luzerne | 346,972 | 6 |
| County with population of more than 5 but less than 5½ ratios | | |
| Bucks | 308,567 | 5 |
| | 5,709,103 | 98 |
| Counties with population of more than 4½ but less than 5 ratios | | |
| Lancaster | 278,359 | 5 |
| Berks | 275,414 | 5 |
| Counties with population of more than 3½ but less than 4½ ratios | | |
| Erie | 250,682 | 4 |
| York | 238,336 | 4 |
| Lackawanna | 234,531 | 4 |
| Lehigh | 227,536 | 4 |
| Dauphin | 220,255 | 4 |
| Washington | 217,271 | 4 |
| Chester | 210,608 | 4 |
| Beaver | 206,948 | 4 |
| Cambria | 203,283 | 4 |
| Northampton | 201,412 | 4 |

| County | Population | No. of Representatives |
|--------|-----------|------------------------|
| Counties with population of more than 2½ but less than 3½ ratios | | |
| Schuylkill | 173,027 | 3 |
| Fayette | 169,340 | 3 |
| Counties with population of more than 1½ but less than 2½ ratios | | |
| Blair | 137,270 | 2 |
| Mercer | 127,519 | 2 |
| Cumberland | 124,816 | 2 |
| Butler | 114,639 | 2 |
| Lawrence | 112,965 | 2 |
| Lycoming | 109,367 | 2 |
| Northumberland | 104,138 | 2 |
| Lebanon | 90,853 | 2 |
| Franklin | 88,172 | 2 |
| Counties with population of more than ½ but less than 1½ ratios | | |
| Clearfield | 81,534 | 1 |
| Armstrong | 79,524 | 1 |
| Centre | 78,580 | 1 |
| Crawford | 77,956 | 1 |
| Somerset | 77,450 | 1 |
| Indiana | 75,366 | 1 |
| Venango | 65,295 | 1 |
| Bradford | 54,925 | 1 |
| McKean | 54,517 | 1 |
| Columbia | 53,489 | 1 |
| Carbon | 52,889 | 1 |
| Adams | 51,906 | 1 |
| Jefferson | 46,792 | 1 |
| Warren | 45,582 | 1 |
| Mifflin | 44,348 | 1 |
| Bedford | 42,451 | 1 |
| Monroe | 39,567 | 1 |
| Huntingdon | 39,457 | 1 |
| Greene | 39,424 | 1 |
| Clinton | 37,619 | 1 |
| Clarion | 37,408 | 1 |
| Elk | 37,328 | 1 |
| Tioga | 36,614 | 1 |
| Susquehanna | 33,137 | 1 |
| | 5,399,899 | 98 |

| County | Population | No. of Representatives |
|---|---|---|
| Counties with population of less than ½ ratio | | |
| Wayne | 28,237 | 1 |
| Perry | 26,582 | 1 |
| Union | 25,646 | 1 |
| Snyder | 25,922 | 1 |
| Wyoming | 16,813 | 1 |
| Montour | 16,730 | 1 |
| Potter | 16,483 | 1 |
| Juniata | 15,874 | 1 |
| Fulton | 10,597 | 1 |
| Pike | 9,158 | 1 |
| Cameron | 7,586 | 1 |
| Sullivan | 6,251 | 1 |
| Forest | 4,485 | 1 |
| | 210,364 | 13 |
| Grand Total | 11,319,366 | 209 |

When we study this apportionment in the light of the representative ratio of 56,597 we see a substantial under-representation of the more populous counties, particularly Allegheny and Delaware, and a gross over-representation of the thirteen least populous counties. This is shown by the following table:

| Counties | No. of Representatives | Average Population Per Representative |
|---|---|---|
| Philadelphia (the most populous) | 35 | 57,214 |
| Allegheny (second most populous) | 28 | 58,163 |
| Delaware (third most populous) | 9 | 61,461 |
| Montgomery, Westmoreland, Luzerne, Bucks (next most populous) | 26 | 58,648 |
| 47 next most populous counties (less than 5 ratios and more than ½ ratio each) | 98 | 55,101 |
| 13 least populous counties (less than ½ ratio each) | 13 | 16,182 |
| Entire State | 209 | 54,159 [8] |

What has already been said regarding the disparities in senatorial apportionment largely applies here, particularly with respect to the thirteen

8. This is not the representative ratio but the figure obtained by dividing the population of the State by 209.

smallest sparsely populated rural counties. Here again the basis for this discrimination is to be found in the provisions of the Pennsylvania constitution. The plaintiffs urge that three provisions of Section 17 of Article II are responsible. The first of these to which they point is the requirement that each county, no matter how small its population, shall have at least one representative. Its effect is to give a representative to each of the thirteen counties having less than one-half a representative ratio, ranging from Wayne with a population of 28,237 to Forest with a population of 4,485, thus providing a representative, on the average, for each 16,182 persons which is only 29% of the state ratio. The most extreme example is Forest county with one representative for only 8% of a ratio. We are clear that this amounts to discrimination in favor of the people of these small rural counties which is invidious since it inevitably dilutes the representation of the people of the more populous counties. The defendants urge that county lines should be respected and we have agreed in general with that proposition. We agree, as we have suggested in discussing senatorial apportionment, that the use of the county as a unit of representation will not run afoul of the equal protection clause to the extent that such use may involve departing from strict equality of representation. But we think that the disparities which result must operate in a purely random and unpremeditated way, and must not exceed or fall short of, as the results of a particular census may dictate, the statewide ratio population by more than a major fraction. This, of course, is not to say that the county unit may be used in such a way as to result in an intentional and inevitable distortion of representation either in favor of or against the people of the county involved. That is the case here with regard to these thirteen least populous Pennsylvania coun-

ties. There is no practical reason why, in order to eliminate this built-in discrimination in favor of their people, they should not be added to adjoining counties to form single member representative districts, just as is done in the case of senatorial districts, just as is done in Pennsylvania with respect to most of these counties in forming judicial districts,[9] and just as was done before the constitution of 1873 with respect to representative districts themselves.[10] That this may readily be accomplished in an equitable way is apparent from the possible arrangement indicated in the following table:

| Counties | Population |
| --- | --- |
| Wayne and Pike | 37,395 |
| Perry and Juniata | 42,456 |
| Union and Snyder | 51,568 |
| Susquehanna and Wyoming | 49,950 |
| Columbia and Montour | 70,219 |
| Potter and Tioga | 53,097 |
| Huntingdon and Fulton | 50,054 |
| Elk and Cameron | 44,914 |
| Bradford and Sullivan | 61,176 |
| Clarion and Forest | 41,893 |

In addition to the discrimination against the people of the more populous counties which results from the separate representation allotted to the smallest counties, the plaintiffs point to the restriction, applicable only to the counties having five or more ratios of population, against being allotted an additional representative for a surplus of population exceeding one-half a ratio. Under the 1960 census this restriction applies to the second and third most populous counties, Allegheny and Delaware, depriving each of them of an additional representative for its surplus of population which exceeds one-half a ratio, a surplus which would have entitled each of them to an additional representative under Section 17 had they been counties with less than five ratios of population. We agree that this provision also is invalid as involving

9. Act of January 8, 1952, P.L. (1951) 1844, 17 P.S. (Pa.) § 784.

10. See Acts of May 20, 1857, P.L. 619; May 5, 1864, P.L. 258; May 6, 1871, P.L. 252; Buckalew; Constitution of Pennsylvania, 1883, pp. 62–63.

invidious discrimination against the people of these counties, since its only possible purpose and effect is to reduce the number of representatives allotted to the more populous counties below what it would be on a proportional basis, and thereby to increase the representation accorded to the people of the more sparsely populated rural counties above that basis.

The third provision upon which the plaintiffs rely is the requirement that counties be used as bases of representation and that no county or part of a county be joined with another county for that purpose. With respect to counties having less than one-half a ratio of population we agree with the plaintiffs' contention, as we have already indicated. But so far as concerns counties having a population in excess of one-half a ratio we agree with the defendants, for the reasons already stated with regard to the senatorial apportionment, that the use of the county as a basis of representation does not in and of itself involve invidious discrimination in violation of the Fourteenth Amendment.

If Allegheny and Delaware counties were allotted the additional representatives to which, as we have seen, they are equitably entitled and if the thirteen counties having less than one-half a ratio of population are joined with others in some such way as suggested above, so as to form multiple-county districts of approximately ratio size, the invidious discrimination which now exists could be eliminated, as the following table demonstrates:

| Counties | Number of Representatives | | Population | Average Population Per Suggested Representative |
|---|---|---|---|---|
| | At Present | As Suggested | | |
| 7 most populous | (98) | 100 | 5,709,103 | 57,091 |
| 60 others | (111) | 101 | 5,610,263 | 55,547 |

It is true that even such an apportionment as this will not provide equality of representation with mathematical exactness. As we have seen, such exactness is impossible to achieve especially when retaining the county as a unit of representation. But the disparities which would arise would be limited in extent to a maximum of one-half a ratio either way and they would be purely random and unpremeditated, depending solely on the particular census figures upon which the apportionment is based. The result indicated above under the 1960 census figures indicates a slight under-representation of the seven most populous counties. An analysis discloses that this result is due to the fact that more of the smaller counties showed a surplus of population exceeding one-half a ratio in 1960 than did the larger counties. In 1970 the census figures might well produce the opposite result.

The plaintiffs in No. 8338 and intervening plaintiff Seidman in No. 8293 make the contention that the representative reapportionment act, Act No. 1 of January 9, 1964, is also invalid to the extent that it does not uniformly divide the counties which are entitled to two or more representatives into single-member districts. This contention does not involve any attack on Section 17 of Article II of the Pennsylvania constitution since that section permits the creation of such districts. However, Section 17 does not require that a county be divided into districts except when it has more than 100,000 population or contains a city having a population equal to a ratio. The section further provides that each district which is set up shall be composed of compact and contiguous territory and shall elect according to its population its proportion of the representatives allotted

to the county, and that no district shall elect more than four representatives.

The representative reapportionment act sets up a curious pattern of representative districts in the larger counties. In all the counties entitled to two representatives, except Lebanon, single-member districts are created.[11] Likewise, in the cases of Lackawanna and York, entitled to four representatives, Berks, entitled to five, and Luzerne and Westmoreland, entitled to six, single-member districts are uniformly provided. But in the other larger counties no such pattern is followed, as appears from the following tabulation:

| County | Districts |
| --- | --- |
| Philadelphia | 18 single-member districts |
| | 7 two-member districts |
| | 1 three-member district |
| Allegheny | 8 single-member districts |
| | 5 two-member districts |
| | 2 three-member districts |
| | 1 four-member district |
| Delaware | 1 single-member district |
| | 2 four-member districts |
| Montgomery | 3 two-member districts |
| | 1 three-member district |
| Bucks | 1 single-member district |
| | 1 four-member district |
| Lancaster | 1 single-member district |
| | 1 four-member district |
| Erie | 2 single-member districts |
| | 1 two-member district |
| Lehigh | 2 two-member districts |
| Dauphin | 1 single-member district |
| | 1 three-member district |
| Washington | 2 two-member districts |
| Chester | 2 two-member districts |
| Beaver | 2 two-member districts |
| Cambria | 2 single-member districts |
| | 1 two-member district |
| Northampton | 2 single-member districts |
| | 1 two-member district |
| Schuylkill | 1 single-member district |
| | 1 two-member district |
| Fayette | 1 single-member district |
| | 1 two-member district |

The defendants have offered no explanation for thus dividing fourteen of the larger counties entirely into single-member districts, while at the same time dividing the fifteen other larger counties, many of them adjoining the single-member district counties, into a crazy quilt of one, two, three and four-member districts. Compare, for example, the disparate treatment accorded to three quite homogeneous adjoining counties, Berks, Lancaster and York. In the absence of any legislative history or other explanation justifying it, and we have found none, we can only conclude that this districting is either the result of gerrymandering for partisan advantage, as was suggested at the hearing, or that it is wholly arbitrary and capricious.

■ The plaintiffs' contention is that thus providing a haphazard arrangement of two, three and four-member districts alongside of single-member districts violates the basic principle of one man— one vote which is, as we have seen, implicit in the constitutional concept of equal protection of the laws in this field. We are constrained to agree with this contention.

Theoretically, at least, when an electorate is called upon to select from their number a smaller group to speak and act for them in a representative assembly, each voter should participate in the selection of one of the representatives only. For since the persons elected are to comprise a boiled down reflection, as it were, of the larger electorate, and since each of them, therefore, in a very real sense stands in the assembly in the place of a group of voters, it would appear to interfere with and dilute the voting rights of others for a voter to participate in the election of more than one representative. It is doubtless upon this principle that the single-member district system has become the widely accepted method of electing the members of Congress and of many other legislative bodies.

However this may be, we think that invidious discrimination in voting power results when, as in the case before us,

11. Blair, Butler, Cumberland, Franklin, Lawrence, Lycoming, Mercer and Northumberland.

some Pennsylvania voters may by reason of the arrangement of legislative districts vote for two, three or even four representatives, while others are restricted to voting for one only. Certainly a voter in a four-member district will not only have four votes for representative, but he will also have four members of the House who will be especially concerned with his views and interests and amenable to his persuasion, since they will want the benefit of his suffrage for reelection. The voter in a single-member district, however, will have only one representative to look to express his views and espouse his interests. We are, of course, not dealing here with a case where all the representatives are elected at large, so that each voter has the same number of votes as every other voter, or with a situation where the districts all elect the same number of members, whether two or more. Those situations do not violate the principle of one man— one vote. But we think that this principle means what it says. It does not mean, for example, in Allegheny County one man—one vote in McKeesport, two votes in Clairton, three votes in Wilkinsburg and four votes in Sewickley, which the statute under consideration authorizes.

It is likewise true we think, as the plaintiffs in No. 8338 urge, that the single-member district has important advantages over the multi-member district or election at large in bringing about a better representation of the body of the voters. Minority groups living in particular localities may well be submerged in elections at large but can often make their voting power much more effective in the smaller single-member district in which they may live. Moreover, a much more widespread personal contact between the representative and his constituents and knowledge by the representative of the views and desires of the voters is possible in a single-member district than in a larger multi-member one where the number of voters is much greater and the responsibility of

representation is divided among two or more representatives answerable to the same electorate.

We conclude that the Act of January 9, 1964, No. 1, which provided for the apportionment of State representatives violates the Fourteenth Amendment in denying to Allegheny and Delaware Counties one additional representative each, in allotting separate representatives to each of the thirteen counties having less than one-half a ratio of population instead of combining each of them with an adjoining county for the purpose of electing a representative, and in failing to divide Philadelphia, Allegheny, Delaware, Montgomery, Bucks, Lancaster, Erie, Lehigh, Dauphin, Washington, Chester, Beaver, Cambria, Northampton, Fayette and Lebanon counties into single-member districts for the election of representatives. Just as in the case of the senatorial apportionment law, to the extent that Sections 17 and 18 of Article II of the Pennsylvania constitution appear to compel this apportionment they may not be regarded as mandatory upon the General Assembly which must follow the mandate of the Fourteenth Amendment in this regard.

We desire to reiterate that we do not regard the departures from exact equality of representation resulting from the use of the county as a unit for the apportionment of senators and representatives and for the creation of senatorial and representative districts to constitute a denial of the equal protection of the laws provided that the departure from the statewide norm or ratio reflected by the county's population does not exceed a major fraction ($\frac{1}{2}$) of a ratio. Such disparity within the limits of a major fraction of a ratio is unavoidable and its effect will be undesigned and random in the sense that it may go either way in the case of any county, depending entirely on the census figures. What we do hold to be a denial of equal protection of the laws to the people of the more populous counties are those provisions of each act which create imbalances in represen-

tation as the direct result of provisions of the Pennsylvania constitution which were designed and are effective to discriminate against them only, by giving more than their fair share of representation to the people of the rural areas of the State at the expense of the urban and suburban dwellers of those populous counties. We also hold that the provisions of the representative apportionment act for multi-member districts in certain parts of certain counties deny to the voters in the single-member districts of those and other counties the equal protection of the laws by depriving them of voting power equal to that of the voters of the multi-member districts.

It follows that an injunction must issue restraining the defendants from enforcing the recently enacted apportionment acts or conducting either primary or general elections thereunder. Under the Pennsylvania constitution, however, one-half of the members of the Senate and all of the members of the House of Representatives are to be elected at the general election on November 3, 1964. Provision must, therefore, be made in time so that these elections can be held. We note that the General Assembly of the Commonwealth is presently in session. By adding the subject of reapportionment to the proclamation which called the present special session or by calling another special session for that purpose the Governor can make it possible for the General Assembly to enact valid reapportionment legislation in ample time to be effective for the forthcoming general election. We sincerely hope that such action will be taken. It is true, of course, that it will be too late for candidates for the Senate and

House under such legislation to be nominated at the spring primary election on April 28th. But nominations of candidates, under these circumstances, could still be made by party committee certificates and independent nomination papers under Section 993 of the Pennsylvania Election Code [12] up to September 21, 1964.

As we have said, we sincerely hope and expect that the Governor and the Legislature of Pennsylvania will do their duty in this regard by enacting promptly the necessary reapportionment laws. For this task is rightly theirs and it is much better in every way that they, and not this Court, should perform it. But we must recognize the possibility that they will not do so, in which event it will be our duty to take the necessary action to make possible the election of senators and representatives to the General Assembly at the 1964 general election under a valid apportionment of seats and thus to enable government in the Commonwealth to go on. Our judgment restraining the enforcement of the Apportionment Acts of January 9, 1964 will, therefore, direct the parties to consider and submit to the Court proposed forms of judgment designed to give complete relief, including the formulation of senatorial and representative districts in accord with federal constitutional requirements, in case the General Assembly fails to take appropriate action. Such proposals will be submitted prior to June 1, 1964 on which day this Court will sit to consider the proposals submitted and to take such action as may be appropriate in the light of the situation then existing.

A judgment will be entered in accordance with this opinion.

12. 25 P.S. (Pa.) § 2953.