**Gary Peter KLAHR, Plaintiff,**

**Richard Duffield, individually, and as Chairman of the Democratic Party of Arizona, Intervenor-plaintiff,**

v.

**Jack WILLIAMS, Governor of the State of Arizona, et al., Defendants.**

**No. Civ–5112 Phx.**

United States District Court
D. Arizona.

July 22, 1969.

See also D.C., 289 F.Supp. 829.

Simon, Smart & Jekel, Scottsdale, Ariz., for plaintiff.

Gorey & Ely, Phoenix, Ariz., for intervenor, Richard Duffield, individually and as Chairman of the Democratic Party of Ariz.

Gary K. Nelson, Atty. Gen., State of Ariz., Phoenix, Ariz., for defendants.

OPINION AND DECISION

Before JERTBERG, Senior Circuit Judge, and WALSH and CRAIG, District Judges.

PER CURIAM.

The Arizona Legislature chosen at the 1966 state elections held in conformity with the decree of this court (Klahr v. Goddard, Governor, etc., D.C., 250 F. Supp. 537; 254 F.Supp. 997), in June, 1967, enacted Chapter 1, Twenty-eighth Legislature, First Special Session, (hereinafter "Chapter 1"), apportioning both the Senate and the House of Representatives of Arizona. Shortly thereafter, pleadings filed herein by the parties sought a determination by the court as to the validity of Chapter 1, plaintiff and defendants seeking a ruling that the legislation is valid, and intervenor-plaintiff contending it must be held unconstitutional under the decisions of the United States Supreme Court relating to apportionment of state legislatures. When referendum petitions were filed against Chapter 1, so that it would not become law unless and until approved by a majority of the votes cast thereon at the 1968 general election, we deferred a hearing as to the validity of Chapter 1 until the time when, if ever, it became effective.

Chapter 1 received the support of the majority of those voting upon it at the 1968 general election and, the Governor of Arizona having thereafter proclaimed it in force and effect, on January 17, 1969, we held the deferred hearing.[1] On April 7, 1969, the Supreme Court of the United States decided Kirkpatrick, Secretary of State of Missouri, et al., v. Preisler, et al., 394 U.S. 526, 89 S.Ct. 1225, 22 L.Ed.2d 519, and Wells v. Rockerfeller, as Governor, et al., 394 U.S. 542, 89 S.Ct. 1234, 22 L.Ed.2d 535. These decisions require that we hold Chapter 1 to be unconstitutional and invalid.

Chapter 1 provides that, beginning with the Twenty-ninth Arizona Legislature, the State of Arizona is divided into seven election districts; and the election districts are subdivided into legislative districts, from each of which there will be elected one senator and two representatives. The plan of Chapter 1 is for the entire membership of the legislature to be apportioned among the election districts on the basis of population; but Chapter 1 provides, further, that the number of legislators apportioned to each election district shall be apportioned among its legislative districts on the basis of voter registration. With respect to election districts, Chapter 1 permits until 1971 a deviation from the ideal population per district of as much as 15%[2]; and in 1971 and thereafter, a deviation from the ideal population per district of 16% plus or minus, is allowable. With respect to legislative districts, Chapter 1 permits until 1971 a deviation from the ideal voter registration per district of as much as 40%[3]; and in 1971 and thereafter, a deviation from the ideal voter registration per district of 16%, plus or minus, is allowable.

It is quite evident that the Legislature in enacting Chapter 1 had the belief that a population variance among election districts of not more than 16%, plus or minus, from the ideal election district population satisfied the constitutional requirements for valid apportion-

---

1. The membership of the court at the time of the hearing comprised the late Senior Circuit Judge Walter L. Pope and District Judges Walsh and Craig. Judge Pope died on March 27, 1969. The court was reconstituted on April 3, 1969, with Senior Circuit Judge Gilbert H. Jertberg and District Judges Walsh and Craig as members.

2. The most populous election district may be approximately 8.6% above the mathe-

matical ideal and the least populous district approximately 15.1% below.

3. This is on the basis of voter registration figures for the 1966 General Election. The legislative district containing the greatest number of registered voters may be approximately 24.26% above the mathematical ideal and the legislative district containing the smallest number of registered voters approximately 40% below.

**226**

ment of such districts.[4] It is evident, too, that with respect to legislative districts the legislature assumed that a like percentage variance of registered voters among legislative districts was permissible. But *Kirkpatrick* and *Wells* hold that the establishment by a state legislature of a fixed percentage population variance which the legislature will consider *de minimis* is inconsistent with and will not satisfy the constitutional requirements that states make their Congressional districts and their state legislative districts as nearly of equal population "as is practicable".[5] Wesberry v. Sanders, 376 U.S. 1, 18, 84 S.Ct. 526, 11 L.Ed.2d 481, 492; Reynolds v. Sims, 377 U.S. 533, 577, 84 S.Ct. 1362, 12 L.Ed.2d 506, 536. *Kirkpatrick* held, further, that even if the court were to assume that apportionment might be based upon eligible voter population rather than total population[6], the districts must be as nearly of equal eligible voter population as is practicable.

■ Nothing presented to the court upon the hearing would permit us to hold that the Legislature could not come any closer than it did in Chapter 1 to achieve population equality among the districts from which its senators and representatives are to be elected. To the contrary, it appears plain that the Legislature assumed that so long as its reapportionment plan kept all election district deviations from ideal population within 16%, plus or minus, the constitutional tests for a valid apportionment were met. No evidence was presented

which would justify either the population variance among the election districts or the registered voter variance among the legislative districts. We hold, therefore, that Chapter 1 is invalid for failing to meet the constitutional requirement of equal representation for equal numbers of people as nearly as is practicable.

■■ Having held that Chapter 1 is invalid, it results that the decree and supplemental decrees heretofore entered in this case redistricting the Congressional Districts of Arizona and reapportioning both Houses of the Arizona Legislature govern primary, general, and special elections which may be held hereafter until the Legislature shall have adopted different, valid, and effective plans for redistricting and reapportionment, or until the further order of the court. However, while agreeing that Chapter 1 is invalid, plaintiff Klahr points out that the population variances among the Arizona Congressional districts, as established by this court's decree, are inconsistent with the rule established in *Kirkpatrick*[7], and he asks that we forthwith order defendants to conduct the 1970 and all subsequent primary and general elections for the offices of Representatives in Congress, State Senator, and State Representative in a manner whereby the candidates for such offices will "run at large" within the State of Arizona. Since we are cognizant of the fact that redistricting and reapportioning are the constitutional duty of the Legislature and not that of

4. At the time Chapter 1 was enacted by the Legislature, the case reports and legal literature with respect to redistricting and reapportionment furnished some apparent justification for this belief.

5. The redistricting of Congressional districts found invalid in *Kirkpatrick* had resulted in maximum variations from ideal population of from plus 3.13% to minus 2.84%. In *Wells*, the variations ranged from plus 6.4888% to minus 6.608%.

6. Though the court did make this assumption, it expressed the caveat that there may be a question as to whether apportionment on a basis other than total

population can ever be permissible. 394 U.S. 534, 89 S.Ct. 1225. In Arizona, the evidence suggests rather strongly that apportionment on the basis of registered voters would result in underrepresentation of the people in Apache and Navajo Counties (R.T., pp. 187, et seq.).

7. Apparently, population variances in reapportionments accomplished by court decree on an emergency basis may be permissible when the same variances would invalidate a legislative reapportionment. Kirkpatrick, 394 U.S. 532, 89 S.Ct. 1225, fn. 2.

this court, we decline to enter such an order at this time. *Kirkpatrick* and *Wells* have now expounded what is required of a legislature if its redistricting and reapportioning work is to be constitutionally acceptable. There is ample time prior to the date that the machinery for conducting the 1970 elections must be set up for the Arizona Legislature to meet its obligation. If it fails, plaintiff may renew his request for relief, since the same will be within our continuing jurisdiction.