William **COUSINS** et al., Plaintiffs,

v.

**CITY COUNCIL OF** the **CITY OF CHICAGO, Richard J. Daley**, individually and as **Mayor** of the **City of Chicago,** and **Board of Election Commissioners** of the **City of Chicago, Defendants.**

Civ. A. No. 70 C 3202.

United States District Court,
N. D. Illinois, E. D.

Jan. 22, 1971.

---

Robert Plotkin, Michael L. Shakman, Thomas N. Todd and Gerald Mindell, Chicago, Ill., for plaintiffs.

Richard L. Curry, Corp. Counsel, City of Chicago, Allen Hartman, First Asst. Corp. Counsel, Edmund Hatfield, Asst. Corp. Counsel, and Earl L. Neal, Sp. Asst. Corp. Counsel, William R. Ming, Jr., Chicago, Ill., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

PERRY, District Judge.

The above-entitled cause came on before the Court, sitting without a jury, on December 23, 1970, on Plaintiffs' application for a preliminary and temporary injunction. Thomas N. Todd, Robert Plotkin and Michael L. Shakman appearing for the plaintiffs, and Richard L. Curry, Corporation Counsel of the City of Chicago, Earl L. Neal, Special Assistant Corporation Counsel, Allen Hartman, First Assistant Corporation Counsel, and Edmund Hatfield and Gayle F. Haglund, Assistant Corporation Counsel, appearing for the defendants City Council of the City of Chicago, and Richard J. Daley, individually and as Mayor of the City of Chicago, and William R. Ming, Jr., appearing for the defendant Board of Election Commissioners of the City of Chicago, and depositions having been taken by plaintiffs in open court on December 28th and 29th, 1970, of Aldermen Thomas E. Keane, Claude W. B. Holman, John J. Hoellen and Paul T. Wigoda of the City Council of Chicago, and Lewis W. Hill, Commissioner of Development and Planning of the City of Chicago, the hearing on plaintiffs' application for a preliminary and temporary injunction was held on December 29, 30 and 31, 1970, and on January 4, 5, 6, 7, 8, 12, 13, 14, and 18, 1971, the Court on said days having heard the testimony and examined the proofs offered by the respective parties, and having heard the closing arguments of the parties on January 18, 1971, and the Court having, pursuant to Rule 65 (a) (2) of the Rules of Civil Procedure for the United States District Courts, advanced the trial of this action on the merits and consolidated it with the hearing on plaintiffs' application for a preliminary and temporary injunction, as this Court has in the course of such hearing repeatedly informed the parties it was doing, the Court, being fully advised in the premises, now makes the findings of fact as follows:

## FINDINGS OF FACT.

1. This is a case brought under the Fourteenth and Fifteenth Amendments to the Constitution of the United States, the United States Code, Title 42, Sections 1971, 1973, 1981, 1983, 1985, 1986 and 1988, and Illinois Revised Statutes, Chap. 24, par. 21–36.

2. Plaintiffs William Cousins, Jr., A. A. Rayner, Jr., Leon M. Despres, William Singer and George Barr McCutcheon are residents, citizens, voters and aldermen of the City of Chicago.

3. Plaintiff Graciano Lopez is a citizen and voter of the City of Chicago and a candidate for alderman in the forthcoming election to be held on February 23, 1971.

4. Plaintiff Independent Voters of Illinois is a voluntary unincorporated association.

5. Plaintiff Committee for an Effective City Council is a voluntary unincorporated association.

6. Plaintiffs William Cousins, Jr., A. A. Rayner, Jr., Rev. Jesse L. Jackson, Rosemary Gulley, Rev. Richard Lawrence, Timuel D. Black, Jr., and Andrew Crout are black persons.

7. Plaintiff Graciano Lopez is of Puerto Rican origin and ancestry.

8. Defendant City Council of the City of Chicago is the legislative body of the City of Chicago. It is comprised of 50 aldermen, one elected from each of Chicago's 50 wards.

9. On November 5, 1970, the City Council of Chicago consisted of 47 members, three vacancies having been occasioned by death after the general aldermanic election. Of the 47 living aldermen, 10 aldermen were black. The other aldermen all had black constituents in their wards in varying numbers.

10. Defendant Richard J. Daley is the Mayor of the City of Chicago and, as such, is the chief executive officer of said city. As mayor, defendant Daley presides over defendant City Council; defendant Daley is also Chairman of the Democratic County Central Committee of Cook County, the governing body of the Cook County Democratic organization.

11. Defendant Board of Election Commissioners of Chicago is the governmental agency charged by law with the duty of administering the election laws applicable to the election of aldermen in the City of Chicago.

12. Plaintiffs have failed to establish that in this cause that there is any class of "all black voters of the City of Chicago" within the meaning of Rule 23 of the Federal Rules of Civil Procedure. Similarly plaintiffs have failed to establish that in this cause is a class of "all black candidates or prospective black candidates for aldermen in the City of Chicago or for any other public office to be elected in whole or in part by the voters of Chicago or by a segment of such voters."

■ Plaintiffs have demonstrated that if there were such classes their claims are not typical of such classes and plaintiffs have likewise demonstrated that they could not fairly and adequately protect the interests of any such class. Similarly, plaintiffs have not been authorized to represent in this cause the black voters of the City of Chicago, or any segment thereof or the black candidates or prospective black candidates for public office in the City of Chicago or any segment thereof. On November 5, 1970, when the ward re-districting ordinance came before the City Council of the City of Chicago, it was composed of 47 aldermen of whom 10 were black persons. Of those black aldermen all save the plaintiffs Cousins and Rayner were among the 41 aldermen who voted for the re-districting ordinance. Only six aldermen, five of whom are among the plaintiffs in this lawsuit and Casimir Staszcuk, voted against the ordinance.

13. The plaintiffs have failed to establish that they, or any of them, are authorized to represent all voters and persons of Puerto Rican or other Latin American origin and ancestry in Chicago; and plaintiffs have failed to establish that plaintiffs are authorized to represent all candidates and prospective candidates of Puerto Rican or other Latin American origin and ancestry in Chicago. Plaintiffs have failed to establish that plaintiffs' claims are typical of the claims of those classes, or that plaintiffs will fairly and adequately protect the interests of those classes.

14. Plaintiffs have failed to establish that in this cause that there is any class of "independent voters of the City of Chicago" within the meaning of Rule 23 of the Federal Rules of Civil Procedure.

Plaintiffs have demonstrated that if there were such classes their claims are not typical of such classes and plaintiffs have likewise demonstrated that they could not fairly and adequately protect the interests of any such class. Similarly, plaintiffs have not been authorized to represent in this cause the "independent voters of the City of Chicago" within the meaning of Rule 23 of the Federal Rules of Civil Procedure.

15. On November 5, 1970, the defendant City Council enacted a redistricting ordinance and map of 50 wards.

16. This redistricting ordinance was enacted pursuant to Section 21–36 of the Municipal Code of Illinois (Ill.Rev.Stat. 1969, ch. 24, par. 21–36), which provides:

"The city of Chicago shall be divided into fifty wards. In the formation of wards the population of each shall be as nearly equal as practicable and each shall be composed of contiguous and compact territory."

17. The redistricting ordinance of November 5, 1970, was enacted in accordance with an order entered by the U. S. District Court for the Northern District of Illinois on September 11, 1968, in Sherman H. Skolnick et al. v. Mayor and City Council, of Chicago, et al., No. 66 C 2134. This order was affirmed by the U. S. Court of Appeals for the 7th Circuit, 415 F.2d 1291 (1969); cert. denied, 397 U.S. 954, 90 S.Ct. 984, 25 L.Ed.2d 138 (1970).

18. The redistricting ordinance and map were drawn at public hearings conducted by a subcommittee of the Committee on Committees and Rules of the Defendant, City Council of Chicago. Sixteen such public hearings were held in the City Hall of Chicago between October 13, 1970 and November 4, 1970, and recorded in full. The verbatim transcript of these hearings, 716 pages in length, has been filed with this Court, has been received in evidence and is part of the record herein.

19. The redistricting was based on mathematical data on population, as was and is required by State statute and Federal Court order, both mentioned above, data prepared by an agency other than the legislative redistricting body— that is, by the Federal Bureau of the Census, which compiled the data for its own administrative purposes in taking a national head count.

That record demonstrates that the sole basis for the shaping and formation of the wards in the City of Chicago drawn at those public hearings was the then available census data with respect to the population of the several census tracts of the City of Chicago.

The 1960 United States Census is the last federal census indicating the numbers of Black, Latin American and other ethnic groups within the City of Chicago. Similar data to be compiled in the 1970 United States Census is not presently available. Such data compiled in the 1960 United States Census understated the non-white population nationally by at least 10 percent and by more than 10 percent understated the non-white population in Chicago.

20. The members of the Defendant, City Council of Chicago, are elected from single-member districts, as required by State statute.

21. The redistricting ordinance enacted November 5, 1970, is based on the following constants: 50 Wards, a mean population per ward of 66,582, the city limits of Chicago on the North, West and South, the natural boundary of Lake Michigan on the East, and the natural and man-made boundaries within the area of the City, such as, the Calumet River and the expressways.

22. At the above-mentioned public hearings of the pertinent subcommittee of the Defendant, City Council, the redistricting ordinance and map were drafted in accordance with an unvarying procedure, wherein census tracts and on occasion, where necessary, census enum-

eration districts were identified in sequence and population figures supplied by the Bureau of the Census were correlated with compact, contiguous territory, a running total being recorded until the median figure of 66,582 was achieved within a range of less than one percent.

23. One or more of the plaintiffs was present at all, or practically all, of these public hearings.

24. During the drawing of the map of the wards, the plaintiffs made no objection to any specific ward boundary on the grounds of racial, ethnic or political gerrymandering. None of them made any such objection until after the proposed map had been completed, and then only in general terms.

25. Plaintiffs Cousins, Rayner, Despres, Singer and McCutcheon participated as aldermen in the debate on the ordinance in the Defendant City Council and voted against its adoption. Enactment of the ordinance carried by a vote of 41–6.

26. The redistricting ordinance enacted November 5, 1970, was approved by the United States District Court for the Northern District of Illinois on November 14, 1970, as constitutionally valid. The District Court found that under the 1970 apportionment ordinance, the wards of Chicago are as nearly equal in population as practicable, satisfying the "one man-one vote" rule and are compact and contiguous.

27. This determination was affirmed by the U. S. Court of Appeals for the Seventh Circuit on December 18, 1970, insofar as the wards of Chicago, as now constituted, were held to be mathematically equal in population, insofar as possible.

28. Each of the said 50 Wards is composed of "contiguous and compact territory" in accordance with Section 21–36 of Chapter 24 of the Illinois Revised Statutes.

29. The Defendants have not conspired with each other, or with anyone else, to deprive plaintiffs, or any of them or anyone else, of any of their constitutional rights.

30. The Subcommittee of the Committee on Committees and Rules, the Committee on Committees and Rules, and the City Council of the City of Chicago, or any of them, in constructing and adopting the ordinance enacted November 5, 1970, redistricting the Wards of the City of Chicago, did not base their legislative determination in this regard on information of any kind or nature of the racial distribution, white and nonwhite, Latin American, Puerto Rican, or other ethnic or color differential, by residents of the population of the City of Chicago.

31. The last official head count by the U. S. Bureau of the Census enumerating the Black, Latin American and other ethnic groups within the City of Chicago was made in 1960. The 1970 U. S. Census enumerating persons of black, Latin American and other ethnic identification is not presently available.

32. There is no evidence that the Defendant City Council of Chicago, in enacting the 1970 ordinance reapportioning the wards of Chicago, intended to dilute or debase the vote of the black population of Chicago, or that of any other ethnic or religious group.

33. The 1970 reapportionment of the wards of the City of Chicago did not have the effect of diluting or diminishing the vote of the population of the Blacks, Puerto Ricans or any other ethnic groups of the City of Chicago.

34. The testimony on the racial composition of the population of Chicago produced by plaintiffs at the trial consisted of mere estimates and projections, not enumeration, which is the required constitutional basis of apportionment, and was based on inadequate surveys.

35. Under the 1961 ward map duly adopted by the City Council of the City of Chicago, black aldermen were elected in 10 of the wards. Pursuant to the 1970 ward map duly adopted in November of 1970, there are 18 wards which

have black candidates seeking election in the aldermanic election to be held February 23, 1971.

36. The definition, number and location of "independent voters" cannot be determined from the evidence presented. There is insufficient evidence to support the allegations that "independent voters" are dispersed or fragmented by the 1970 Chicago reapportionment ordinance.

37. Despite numerous requests by this court the plaintiffs have failed to define within any degree of specificity what they mean by the term "independent voters" which plaintiffs used. There is insufficient evidence to support the allegations of the complaint that "independent voters" are dispersed or fragmented by the 1970 Chicago reapportionment ordinance.

Several graduate students of political science participating in an intern program conducted jointly by the City Council of Chicago and Chicago Circle Campus of the University of Illinois, under the direction of a person who was both an employee of the City Council and a member of the faculty of that university, drew a map of a possible apportionment of the wards of the City of Chicago in September 1970 as an academic exercise. That said map was based on incomplete and inaccurate census returns, did not succeed in allocating equal populations to its wards, and the wards outlined in the students' project are dissimilar to the wards constituted by the official map. There is no evidence that this students' map was relied upon by the Subcommittee of the Committee on Committees and Rules, the Committee on Committees and Rules or the City Council of the City of Chicago in drafting and adopting the Reapportionment Ordinance.

38. While this Court is of the opinion that claims of political gerrymandering are not justiciable, even if such claims were justiciable, the evidence offered by plaintiff in support of their claim of political gerrymandering was conjectural, insubstantial and minimal, and no finding of political gerrymandering could be predicated thereon.

39. There is no evidence of a threat of irreparable injury to plaintiffs.

40. There would be irreparable harm to the citizens of the City of Chicago if the Aldermanic election, scheduled to be held on February 23, 1971, under the reapportionment ordinance enacted by the City of Chicago on November 5, 1970, were postponed or delayed.

41. There are now six vacancies in the City Council of Chicago occasioned by deaths and resignations.

42. There are at least six wards not now represented by aldermen in the City Council of the City of Chicago. Of those wards three were formerly represented by black aldermen. Accordingly there would be irreparable harm to the citizens of those wards without regard to race, creed or color if the aldermanic election scheduled to be held on February 23, 1971 were not so held.

The vast majority of the non-whites in the City of Chicago live in residential, racially segregated areas which have a greater population density area-wise than the density of population in other areas of the City.

From the foregoing facts, the Court concludes:

## CONCLUSIONS OF LAW

1. The Fifteenth Amendment to the Constitution of the United States provides that "The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude."

2. The Fifteenth Amendment protects the voting rights of citizens of the United States, whether they be black, white or of any other race or color.

3. The Fourteenth Amendment to the Constitution of the United States provides that no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor deny to any per-

son within its jurisdiction the equal protection of the laws.

■ 4. The ordinance reapportioning the wards, or municipal legislative districts, of the City of Chicago, Illinois, enacted November 5, 1970, does not violate either the Fourteenth or the Fifteenth Amendment to the Constitution of the United States.

5. The 1970 Chicago reapportionment ordinance does not violate U.S. Code, Title 42, Sec. 1971, 1973, 1981, 1983, 1985, 1986 or 1988.

6. The 1970 Chicago reapportionment ordinance does not violate Illinois Revised Statutes, Chapter 24, Sec. 21–36.

■ 7. The equality of population of the wards of Chicago is now *res judicata*. Skolnick et al. v. Mayor and City Council of Chicago et al., U. S. Court of Appeals, 7th Cir., No. 18878; decided December 18, 1970.

8. The wards, or legislative districts, of the City of Chicago are compact and contiguous.

■ 9. Plaintiffs' claim that it is constitutionally essential that the proportion of the number of wards in which the majority is of a certain racial or ethnic identification must be the same as the proportion of the number of persons of such racial or ethnic identification is to the total population, is untenable. Wright v. Rockefeller, 376 U.S. 52, 84 S.Ct. 603, 11 L.Ed.2d 512 (1964); Mann v. Davis, 245 F.Supp. 241 (E.D., Va., 1965); affd. 382 U.S. 42, 86 S.Ct. 181, 15 L.Ed.2d 35 (1965).

■ 10. The complaint filed by plaintiffs is a plea for segregated reapportionment of the wards, or legislative districts, of the City of Chicago according to race, ethnic origin, color or creed. Any and all such color-conscious segregated basis of apportionment are constitutionally impermissible. Wright v. Rockefeller, 376 U.S. 52, 84 S.Ct. 603 (1964).

■ 11. The issue of political gerrymandering—at least in single-member

representative districting, such as in the apportioning of the wards of Chicago— is non-justiciable. Wells v. Rockefeller, 311 F.Supp. 48 (S.D., N.Y., 1970), affd. 398 U.S. 901, 90 S.Ct. 901, 26 L.Ed.2d 60 (1970); WMCA, Inc. v. Lomenzo, 238 F.Supp. 916, at 925 (S.D., N.Y., 1965), affd. 382 U.S. 4, 86 S.Ct. 24, 15 L.Ed.2d 2 (1965); Badgley v. Hare, 385 U.S. 114, 87 S.Ct. 338, 17 L.Ed.2d 207 (1967); Sincock v. Gately, 262 F.Supp. 739 (D.C. Del., 1967), Meeks v. Avery, 251 F. Supp. 245 (D.C., Kan., 1966); Bush v. Martin, 251 F.Supp. 484 (D.C., Tex., 1966); Sims v. Baggett, 247 F.Supp. 96 (M.D., Ala., 1965).

Let judgment for defendants be entered accordingly:

A. Denying the entry of a temporary injunction;

B. Denying the entry of a permanent injunction;

C. Striking the class action allegations of the complaint;

D. Striking the conspiracy allegations of the complaint; and

E. Declaring that the wards of the City of Chicago as created by the ordinance enacted on November 5, 1970 are compact and contiguous.

F. Declaring that the Ordinance enacted on November 5, 1970, reapportioning the wards of Chicago, is not racially or ethnically discriminatory, is not violative of the Fourteenth and Fifteenth Amendments of the Constitution and is constitutionally valid.

The court directed the parties hereto to submit proposed Findings of Fact and Conclusions of Law and has read and considered them. It has rejected those proposed by plaintiffs and adopted those proposed by defendants and they are herein above set forth.

The court additionally makes the following findings and conclusions:

The court finds that there are fourteen individual plaintiffs, including

the intervenor and that ten of these plaintiffs did not testify or offer any evidence on behalf of themselves or show in any way that they have sustained or may sustain any injuries individually or otherwise because of the Ordinance of the City of Chicago herein sued upon, although several of said plaintiffs were observed by the court to be present at various times during the trial. Plaintiffs Alderman William Cousins, Aldermen Leon Despres, Graciano Lopez and Mrs. Mary Lee Leahy appeared and testified. All four of these plaintiffs who testified stated that they were candidates. Each stated that he or she had no complaint about the size, shape, or racial or ethnical makeup of the Ward in which he or she was running. Each expressed opinions in general terms that there were racial or ethnical discrimination in the reapportioning of other Wards, but none of them gave or produced any evidence supporting their respective opinions. None of them offered any evidence of any injury that he or she has sustained or may sustain because of the Ordinance. None of said plaintiffs offered any evidence whatever of any constitutional right of his or her that is or may be infringed or impaired by said evidence. None of said plaintiffs proved any of their allegations in the complaint as amended.

The court further finds that the Independent Voters of Illinois and the Committee for an Effective City Council are each and both unincorporated, voluntary associations and that they do not allege, nor have they proved, that they have sustained or will sustain any substantive injury by virtue of the adoption of the Ordinance in question, but merely assert that they represent certain classes of individuals whose constitutional rights have been impaired.

The court concludes as a matter of law that the individual plaintiffs are not entitled to any relief herein for their failure to prove any injury to them or violation of their constitutional rights and, therefore, the defendants herein are entitled to a decree in their favor.

The court further concludes that as a matter of law constitutional rights under the first eight amendments to the Constitution of the United States and the Thirteenth, Fourteenth and Fifteenth Amendments are individual rights. Only an individual or individuals on behalf of a properly brought class action have any standing to bring suits in this court. The court, therefore, concludes that since the Independent Voters of Illinois and the Committee for an Effective City Council have not charged or proved any substantive rights herein, they have no standing to be heard in this court and should be dismissed as party plaintiffs.

## DECREE

This matter having been heard by the court, and the court having this day entered simultaneously herewith its Findings of Fact and Conclusions of Law herein, in accordance therewith

It is ordered, adjudged and decreed that:

1. The prayers of the plaintiffs for both a preliminary and a permanent injunction are hereby denied.

2. The allegations of a class action as set forth in the complaint as amended are hereby stricken and the complaint as a class action is dismissed for failure to maintain such allegations by any competent evidence.

3. The conspiracy allegations in the complaint as amended are stricken and dismissed for failure to support and maintain such allegations with any competent evidence.

4. The complaint as amended of plaintiffs Independent Voters of Illinois and Committee for an Effective City Council, both unincorporated and voluntary organizations, is stricken and dismissed for the failure of each and both to allege or prove any substantive injury as required by law and, further, to prove that they or either of them have any standing to bring a suit involving a constitutional question in this court.

5. The Wards of the City of Chicago as created by the Ordinance enacted by

the City of Chicago on November 5, 1970 are compact and contiguous.

6. Said Wards are not more irregular nor in any manner arranged in an unnatural distribution of population or gerrymanded to accommodate any racial, ethnical, economic or other group of people. The Ordinance creating said Wards is fair, reasonable, legal and constitutional.

7. Said Ordinance enacted by the City of Chicago on November 5, 1970, reapportioning the Wards of the City of Chicago, is not racially, nor ethnically, nor otherwise discriminatory, and it is not violative of the Fourteenth and Fifteenth Amendment or any other Amendment or provision of the United States Constitution but is in every way constitutionally valid.

8. Defendants have judgment for their costs herein against the fourteen individual plaintiffs herein, jointly and severally, but not against the other plaintiffs who have no standing in this court and against whom no money judgment may be entered.