Donald **FERRELL** et al., Plaintiffs,

v.

The **STATE OF OKLAHOMA** ex rel. Governor David **HALL** et al., Defendants.

Civ. No. 71-656.

United States District Court,
W. D. Oklahoma.

Feb. 28, 1972.

Judgment Affirmed May 22, 1972.
See 92 S.Ct. 2045.

R. C. Jopling, Jr., and Timothy D. Leonard, of Jopling, Blankenship, Herrold, Russell & Leonard, Oklahoma City, Okl., for plaintiffs.

Larry Derryberry, Atty. Gen. of Okl., and Robert H. Mitchell and Marvin C. Emerson, Asst. Attys. Gen., for defendants.

Before McWILLIAMS, Circuit Judge, BOHANON, Chief District Judge, and EUBANKS, District Judge.

## MEMORANDUM OPINION

EUBANKS, District Judge.

### BACKGROUND AND OUTLINE OF THE ISSUES

This Declaratory class action is brought by five Republican State Senators and four individual citizens of the State of Oklahoma challenging the constitutionality of the Oklahoma State Senate Apportionment Act of 1971. A three-judge court was convened to hear the case and jurisdiction is predicated upon the Fourteenth and Fifteenth Amendments to the Constitution of the

United States; 28 U.S.C. §§ 2281, 2284; 28 U.S.C. § 1343(3) and 42 U.S.C. §§ 1983, 1988. The specific contentions of the plaintiffs as set forth in the pretrial order are as follows:

1. The Act is invidiously discriminatory on its face against Negro citizens of Tulsa County because it failed to create a single State Senate District in which Negro citizens constituted a clear majority and that this result was intentional.

2. That the State Senate Apportionment Act of 1971 was a purposeful device to further racial discrimination used by the Oklahoma Legislature for such purpose in enacting this Act.

3. That placing the Negro citizens of Tulsa County into three State Senatorial Districts in each of which they constitute a minority of the total population has the effect of cancelling and diluting these citizens' vote in an invidiously discriminatory way violative of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

4. Those citizens who live in odd numbered State Senatorial Districts which elected a State Senator in 1968 and whose place of residence has been included by the Act in the territory of a State Senate District where there is a holdover Senator elected in 1970 will not get to vote again for a State Senator until 1974 and this situation infringes upon the right to vote of such citizens by allowing them to vote only one time over a six year period for a State Senator.

5. Those citizens who reside in a district which elected a State Senator in 1968 and whose residences have been included in the territory of a State Senate District with a holdover Senator elected in 1970 who will not be subject to re-election until 1974 will be represented for two years by a holdover Senator in whose election they did not participate.

6. The Act in shortening the terms of State Senators Don Ferrell, Leon Field and G. O. Williams, elected in 1970 to represent Districts 18, 28 and 30, while not shortening the terms of the other incumbent State Senators elected in 1970 violates the Oklahoma Constitution and the United States Constitution. Such action was arbitrary and capricious conduct by the Legislature and constitutes invidious discrimination against the three incumbent State Senators elected in 1970 to represent State Senate Districts 18, 28 and 30 and the people of Oklahoma who voted for or against them.

7. The Act violates the second sentence of Section 9A of Article V of the Constitution of Oklahoma and the United States Constitution in that it fails to consider compactness, area, political units, historical precedents, economic and political interests, contiguous territory, and other major factors, to the extent feasible, although it is conceded that the Act gave consideration to population.

8. That the plan unnecessarily violates existing boundary lines of political subdivisions, community interests, natural and historical boundary lines, and particularly county boundary lines and that such violation was intentional and by preference. This failure to do so constitutes invidious discrimination against those citizens who reside in counties whose boundaries were crossed by the State Senate District lines of the Act.

9. The plaintiffs and other citizens of Oklahoma similarly situated cannot through the elective processes or otherwise protect their rights.

10. The plaintiffs and other citizens similarly situated have no remedy against the invidious discrimination of the Act through initiative petition, referendum, or constitutional convention.

As their defenses herein the defendants' contentions as stated in the pretrial order are:

1. The State Senate Apportionment Act of 1971 is a valid, full and complete, good faith satisfaction of the requirements of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States, as inter-

preted and applied in Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506, and subsequent decisions of the United States Supreme Court, and Section 9A of Article V of the Oklahoma Constitution as interpreted and modified by this Court in Reynolds v. State Election Board, 233 F.Supp. 323.

2. That the Act is a valid, full, complete, good faith effort to divide the State into 48 State Senatorial Districts as equal as may be in population to the end that the vote of each citizen will be equal to the vote of all other citizens in the election of members of the State Senate.

3. That equality of population between the State Senatorial Districts was the preeminent factor (overriding objectives) considered in the legislative processes which led to enactment of the Act.

4. That contiguity was the next principal factor considered in the legislative processes which led to the enactment of the Act, subordinate only to the preeminent consideration of equality of populations.

5. The contiguity, compactness, political units, historical precedents, area, and economic and political interests were considered as factors in the legislative processes leading to the enactment of the Act, but they were subordinate to the preeminent principal of equality of population, and that such ranking of priorities of consideration was required and appropriate under the Fourteenth Amendment to the Constitution of the United States as interpreted in Reynolds v. Sims, supra, and subsequent decisions of the United States Supreme Court.

6. That the factors of compactness, area, political units, historical precedents, economic and political interests, contiguous territory and other major factors to be considered according to the second sentence of Section 9A of Article V of the Oklahoma Constitution are no longer a valid part of the Oklahoma Constitution and are not mandatory considerations of the Legislature in enacting an apportionment plan because the same were found to be unconstitutional and declared to be null and void by this Court in Reynolds v. State Election Board, 233 F.Supp. 323, at page 329. Such factors are now permissible considerations, but not mandatory considerations for the Legislature in designing an apportionment plan.

7. That no consideration was given to race in the legislative processes which led to the enactment of the Act.

8. That the Act is not invidiously discriminatory against Negro citizens residing in Tulsa County or anywhere else, nor against any other cognizable racial minority.

9. That no data as to voter registration, party affiliation, or votes cast in past elections was considered in the legislative processes leading to the enactment of the Act.

10. That it is inevitable whenever four year terms are to be respected and continued during the period in which a reapportionment of State Senate Districts occurs (See Supplemental Order in Reynolds v. State Election Board, 233 F. Supp. 323, at page 363) that some citizens will reside in territory which is assigned to a district which has an incumbent holdover Senator who will represent those citizens for the final two years of his term and that such situation does not constitute invidious discrimination contrary to the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.

11. The Act was not arbitrary and capricious in shortening the terms of the three State Senators elected in 1970 from Senate Districts 18, 28 and 30. On the contrary, inasmuch as the Section 9A of Article V of the Constitution of Oklahoma specifies that there shall be only one Senator elected to represent each State Senate District and inasmuch as there were two such incumbent State Senators in each of the new Senate Districts 49 and 50, it was required by the Oklahoma Constitution that the terms of

such incumbent Senators in former Districts 18, 28 and 30 be shortened to expire in 1972 in order that only a single Senator would be elected from new Senate Districts 49 and 50 in 1972.

12. That to satisfy Section 9A of Article V of the Oklahoma Constitution it was necessary to provide that the three Senators elected from the new Senate Districts 50, 52 and 54 be elected in 1972 for an initial term of only two years in order that in 1974 and subsequent years the provision of the Oklahoma Constitution requiring that one-half of the Senators be elected at each General Election would be met. That for the Act to do so did not constitute arbitrary and capricious action, but on the contrary constituted compliance with the Constitution of the State of Oklahoma.

13. That there is no competent evidence, nor, indeed, any evidence whatsoever, of improper, unlawful or unconstitutional considerations having been made by the Legislature during the processes which led to the enactment of the Act.

The case came on for trial on January 17, 1972 and evidence was presented by both sides lasting a full day and arguments were heard on the following day. The Court, being fully advised does find and conclude as follows:

## FINDINGS OF FACT

1. Plaintiffs are Donald Ferrell, Denzil Garrison, James M. Inhofe, John McCune, and G. O. Williams, all Republican members of the Oklahoma State Senate, and Julius Pegues, James O. Goodwin, Ronald L. Young, and Wendell Powell, citizens of the State of Oklahoma.

2. Defendants in the action are the State of Oklahoma, ex rel. David Hall, Governor, the State Election Board, the State Treasurer, the State Auditor, the Oklahoma Tax Commission, and Larry Derryberry, State Attorney General.

3. The State Senate Apportionment Act of 1971 (Ch. 81, 1971 Okla.Sess. Laws) has been codified as 14 O.S.1971, §§ 80.1 through 80.7 (omitting Sections 8 and 9). This Act was duly and regularly enacted in accordance with law.

4. Because of population shifts in the State of Oklahoma since the redistricting of Legislative seats ordered by this Court in 1964 and pursuant to the mandate of the Oklahoma Constitution it was necessary that the Senate districts be realigned in 1971. Remembering that the prior litigation culminating in court-ordered reapportionment of the Oklahoma Legislature originated with groups from the two metropolitan areas, (Oklahoma City and Tulsa) leaders in the Senate decided to give those cities first consideration in the new districting plan in an endeavor to ward off challenges thereto. Based upon the best census data then available Oklahoma County was entitled to have almost ten senators and the population of Tulsa County nearly justified eight senators. It was early decided by the Senate leaders, which decision was apparently concurred in by all metropolitan area senators of both parties and received no strenuous opposition from the senators representing rural areas, that sufficient areas would be borrowed from counties adjoining Oklahoma and Tulsa to bring these eighteen senatorial districts up to the "ideal" population requirements.

The author of the Act being challenged was Senator Finis Smith, who is also President Pro Tempore of the Oklahoma State Senate. Senator Bryce Baggett, who is Chairman of the Senate Committee on Constitutional Revision and Redistricting, supervised in the preparation of the Act, particularly with reference to Oklahoma County. Senator Finis Smith personally coordinated the Bill insofar as the northeastern quadrant of the state was concerned; Senator Hamilton was coordinator of it insofar as the southeastern quadrant of the state was concerned, Senator Taliaferro coordinated it insofar as the southwest part of the state was concerned; and Senator Field coordinated it insofar as the northwest corner of the state was concerned. All of the coordinating State Senators

mentioned are Democrats as is Senate President Pro Tempore Finis Smith.

5. In its effort to equalize the population in each District the Oklahoma Legislature utilized the best and only data as to the 1970 population of Oklahoma that was available from the Bureau of Census of the United States Department of Commerce which was the First Count Summary (computer) tape of the Master Enumeration District List for Oklahoma, the same being a public document.

6. According to the First Count Master Enumeration District List the 1970 population of Oklahoma was 2,559,-229. The ideal population of 53,318 persons for each Senatorial District is determined by dividing the total State population by 48, the number of State Senate Districts fixed by the State Constitution.

7. The smallest census areas for which the First Count Master Enumeration District List provided population figures were Enumeration Districts and Block Groups, of which there were a total of 4,013 such areas. The First Count Master Enumeration District List described each such area by county name, assigned census number and gave the 1970 population thereof.

8. The smallest area breakdown of population in nonmetropolitan areas as provided by the United States Bureau of Census is the "Enumeration District." The smallest area breakdown of population in metropolitan areas in the First Count Master Enumeration List is Block Groups. Any further breakdown did not become available from the Bureau of Census until after the 1971 Legislature adjourned.

9. The 1971 Oklahoma Legislature used the First Count Master Enumeration District List exclusive of all other data as to population in drafting the State Senate Apportionment Act of 1971.

10. The 1971 Oklahoma Legislature utilized a computer in the preparation of the State Senate Apportionment Act of 1971. The 1970 population assigned in the Act is correct as reported in the First Count Master Enumeration District List.

11. The apportionment plan in the State Senate Apportionment Act of 1971 approaches nearly exact mathematical equality of the 1970 population among the 48 State Senate Districts. The 1970 populations assigned each district and the deviation from the "ideal" as reflected in Section 4 of the Act are correct as reported in the First Count Master Enumeration District List.

12. The largest deviation below the ideal is 255 people and the largest deviation above the ideal is 245 people. The low deviation from the ideal, stated as a percentage is 0.478%, and the high deviation from the ideal, stated as a percentage, is 0.460%. The total variance from the most populous district to the least populous district, stated as a percentage, is 0.938%. The total variance from the most populous district to the least populous district in the Oklahoma plan is less than one percent.

13. No plan of districting the State Senate providing a lesser deviation from the ideal population or a lesser variance from largest to smallest district than the State Senate Apportionment Act of 1971 was submitted to the Oklahoma State Senate or to its Committee on Constitutional Revision and Redistricting which had jurisdiction of this subject.

14. The plan submitted by State Senator G. O. Williams, one of the plaintiffs, to Committee Chairman Bryce Baggett was an incomplete plan in that it did not apportion the districts contained within the two metropolitan areas of Oklahoma City and Tulsa. The Williams plan also provided for a greater deviation from the ideal population than the plan enacted in the State Senate Apportionment Act of 1971.

15. The plan submitted by State Senator James M. Inhofe, one of the plaintiffs, to the State Senate Committee on Constitutional Revision and Redistricting provided for a greater deviation from the ideal population than the plan enacted

in the State Senate Apportionment Act of 1971.

16. No other persons introduced (in the State Senate or in its Committee on Constitutional Revision and Redistricting) any plan for districting the State Senate, excepting Senate Bill No. 349 by Senators Stansberry and McCune which was partial and incomplete because it related only to senatorial districts 40, 47 and 52.

17. The evidence established that the State Senate Apportionment Act of 1971 had the least deviation in population from the ideal of any plan adopted by any other state in the United States. Plaintiffs concede that the Act is not invidiously discriminatory insofar as population is concerned.

18. The State Senate and its Committee on Constitutional Revision and Redistricting did not use any census data pertaining to race or racial distribution of population in the consideration of the State Senate Apportionment Act of 1971.

19. The census data as to racial distribution of the population contained in the First Count Master Enumeration District List was never printed or made available in usable form to any member of the Legislature or to any other person while the State Senate Apportionment Act of 1971 was under consideration. The Oklahoma Legislature was required by Section 11A of Article V of the Oklahoma Constitution to enact an apportionment law within sixty legislative days after it convened in 1971 which made the deadline for enactment to be April 21, 1971.

20. Under the provisions of the State Senate Apportionment Act of 1971, the terms of office of three State Senators elected in 1970 in former State Senate Districts Nos. 18, 28 and 30 are shortened to two (2) years.

21. The initial terms of office for the Senators to be elected in 1972 from State Senate Districts Nos. 50, 52 and 54 will be two (2) years. After 1972 one-half of the Senators will be elected at each general election during the remainder of the decennium as required by the State Constitution.

22. Those citizens who reside in areas that elected a Senator in 1968 and whose place of residence have been placed into a State Senate District having a holdover Senator elected in 1970 will not have an opportunity to vote for a Senator until 1974. Such citizens so situated will be represented by the Senator elected in 1970 from the former District until 1974.

23. No evidence was introduced tending to establish that there was any intent to discriminate against the three Senators elected in 1970 whose terms will be shortened to two years. Two senators who had their terms shortened were Republican the other was a Democrat.

24. Plaintiffs did not offer any evidence tending to establish intent to discriminate (on the part of any member of the Oklahoma Legislature) against those citizens who reside in areas that have been placed into a State Senate District having a holdover Senator elected in 1970 and who will not have an opportunity to vote for a Senator until 1974. Plaintiffs have failed to prove intent to discriminate against those citizens in the State of Oklahoma who will be represented by a State Senator in whose election they had no opportunity to participate.

25. Plaintiffs did not offer any evidence tending to establish intent (on the part of any member of the Oklahoma Legislature) to discriminate against any citizen of the State of Oklahoma by crossing the boundaries of political subdivisions while shaping the new Senate Districts.

26. The Court was impressed with the testimony of Senate President Pro Tempore, Finis Smith who had the biggest hand in drawing the senatorial districts in Tulsa County. Although he had general knowledge of where the black people lived in Tulsa County the boundaries of each senatorial district as drawn and suggested by him was without any intent whatever to dilute the vote of any black man and the matter of racial dis-

crimination in the bill was never mentioned to him until long after the bill became law. No witness testified as to hearing any expression of intent on the part of any legislator to discriminate against any minority race during the time the Senate Apportionment Act was being considered. All plaintiffs who testified admitted that they knew of no purposeful effort or attempt on the part of any legislator to dilute the vote of any minority race in Tulsa County or elsewhere, however, some contend that "on its face" the Act accomplishes this result. We believe to be true the testimony of Senator Smith that he was infuriated when he heard of charges that the black sector of Tulsa was deliberately divided into three different senatorial districts so that the blacks could not elect one of their race in any district, which charge he heard long after the passage of the Act. The exhibits introduced show only a slight deviation in Senate District boundaries in the current Act from those boundaries ordered by this Court in 1964 insofar as the Negro sector of Tulsa is concerned.

27. The record is competely devoid of evidence that any citizen of the State of Oklahoma has less opportunity than any other citizen of the State of Oklahoma to participate in the political processes, to elect legislators of his choice, to register as an elector, to cast a ballot, to choose the political party he desires to support, to participate in its affairs, to be equally represented on those occasions when legislative candidates are chosen, or to be a candidate for office in the State of Oklahoma.

28. The plan of apportionment prepared by William L. Kimmell and introduced by plaintiffs with a request that it be adopted as the plan of apportionment for the State Senate of Oklahoma deviates from the population ideal by 4.9% in both directions. The variation from the most populous to the least populous district is more than 9.5%. In this plan certain Enumeration District Lines are crossed. Where those Enumeration District Lines were crossed Mr. Kimmell guessed at the population on each side of the bisecting line. Because of this crossing of ED lines the population cannot be precisely ascertained. The plan was constructed so as to create a district in Tulsa County containing as many black citizens as possible. The Kimmell plan was prepared on his assumption that a population deviation of five percent from the ideal would be de minimis, acceptable and reasonable. The plan was formulated to maintain the integrity of county lines and political subdivisions. This plan shows fewer crossings of county lines than does the Act under consideration but it, too, contains some odd shaped Districts.

29. The evidence established that every State Senator had ready access to map and census information through the Legislative Council, had the right and opportunity to prepare and submit plans, had the right and opportunity to participate in the committee proceedings and in the proceedings of the whole Senate concerning passage of the Oklahoma State Senate Apportionment Act of 1971.

30. We find the testimony of Senator Garrison to be true when he said the Chairman of the Senate Committee on Constitutional Revision and Redistricting told him early in the session that some senators had red X's on their forehead (meaning that their district would be so arranged that their re-election would be unlikely) and that other senators wore white hats (meaning that a district favorable to them would be provided) but we accept as a political fact of life that in legislative bodies the party in control almost always does what it can to enhance its position at the next election and what it can to impede the chances of the minority party. The converse also seems likely.

31. We find that on one occasion Senator Garrison walked into a Senate office where a legislative aide was working on a senate districting map whereupon the aide quickly turned the map over so as to prevent Senator Garrison from examining it but we further find that this episode was truthfully and satisfactorily

explained by that employee (William Bleakley) when he testified that he was working on a plan for a particular Senator and was protecting the work product for him and that he would have done the same thing for Senator Garrison had he been preparing a map for him and another Senator had walked in.

32. The proof established that the overriding consideration in the formulation of the Oklahoma State Senate Apportionment Act of 1971 was to attempt as nearly as practicable to create Senatorial Districts of equal population in order to satisfy the "one man—one vote" rule established by the Constitution and interpreted by the Supreme Court of the United States, rather than to allow a de minimus variation or deviation.

33. The State Senate Apportionment Act of 1971 was a good faith effort of the Oklahoma Legislature to comply with the Fourteenth Amendment to the Constitution of the United States while fulfilling its duty under Section 9A of Article V of the Oklahoma Constitution, as the latter has been construed by this Court, and that the Act does satisfy both of those provisions.

34. Approximately 36,000 black people reside in Tulsa County and some 32,000 of them live in one fairly compact neighborhood. The Act under scrutiny divides this sector into three Senate Districts so that the highest percent of Negro citizens residing in any district is 36% in District 33. Although in the distant past Oklahoma had a history of racial discrimination and segregation we are not prepared to say that today whites automatically vote against a black candidate or that black citizens automatically vote for one of their own race. Oklahoma was the first State in the Nation to abolish dual school systems after the Supreme Court decided Brown v. Board of Education and same was done by popular vote.

## CONCLUSIONS OF LAW

1. The Fourteenth Amendment to the Constitution of the United States provides that "No State shall make or enforce any law which will . . . deny to any person within its jurisdiction the equal protection of the laws."

2. The Fifteenth Amendment to the Constitution of the United States provides that "The rights of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude."

3. The State Senate Apportionment Act of 1971 (Ch. 81, 1971 Okla.Sess. Laws) which has been codified as 14 O.S. 1971, §§ 80.1 through 80.7 (omitting Sections 8 and 9), does not violate either the Fourteenth or Fifteenth Amendment to the Constitution of the United States.

4. The Oklahoma State Senate Apportionment Act of 1971 does not violate U.S.Code, Title 42, §§ 1983 or 1988.

5. As a matter of law we conclude that the Oklahoma Legislature had the authority to allow members of the Oklahoma State Senate elected in 1970 to serve a four year term and hold over for two years after the enactment of the Oklahoma State Senate Apportionment Act of 1971 pursuant to the Court's ruling in Reynolds v. State Election Board, 233 F.Supp. 323 (W.D.Okl.1964). Sims v. Amos, 336 F.Supp. 924 (M.D.Ala.1972).

6. We hold that the Oklahoma Legislature had the authority and duty to shorten the terms of those three Senators who were elected in 1970 in Senate Districts 18, 28 and 30 in order to avoid those three districts having two Senators each in new Districts 49 and 50 contrary to Section 9A of Article V of the Oklahoma Constitution. This action taken by the Oklahoma Legislature was not invidiously discriminatory, but was in compliance with the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution in that it provides that the citizens of each district will be equally represented at all times by a Senator. Reynolds v. State Election Board, 233 F.Supp. 323 (W.D.Okl. 1964).

■ 7. Plaintiffs claim that it is invidiously discriminatory for the State Legislature to provide that citizens living in certain geographic areas of the State of Oklahoma, who last voted for a Senator in 1968, and who will next vote for a Senator in 1974, is untenable. During the two year transitional period in changing from the court-ordered apportionment plan of 1964 to the constitutional apportionment plan of 1972, such situations are unavoidable if four year overlapping terms are to be provided as required by the State Constitution—and to do so does not offend the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States. Stout v. Bottorff, 249 F.Supp. 488 (D.C.Ind.1965); Reynolds v. State Election Board, 233 F.Supp. 323 (W.D. Okl.1964).

It is impossible, where Senate District boundaries are changed, to avoid having some voters represented by a Senator for whom they had no opportunity to support or oppose. We observe, in passing, that this also happens with regard to new registrants who reach the age of 18 years shortly after an election and to people moving from one area to another. Certainly no one would argue that those voters were thereby denied their constitutional rights.

8. The factors of compactness, area, political units, historical precedents, economic and political interests, contiguous territory and other factors provided by Section 9A of Article V of the Oklahoma Constitution were not a valid part of the Oklahoma Constitution and were not mandatory upon the Legislature when it enacted the currently challenged apportionment plan, the same having been expressly held to be unconstitutional and declared to be null and void by Reynolds v. State Election Board, 233 F.Supp. 323 (W.D.Okl.1964) at page 329. Such factors should be considered in the future so long as they do not detract from population equality. (See Special Comment below).

■ 9. The factors of compactness, area, political units, historical precedents, economic and political interests, contiguous territory and other factors are not required as mandatory considerations under the United States Constitution, but rather, are permissible considerations in designing an apportionment plan, so long as they do not detract from or subvert population equality as the one overriding consideration. As a matter of law it is not invidious discrimination for the State Legislature to cross the boundaries of political subdivisions, when such action is necessary or desirable to achieve as nearly equal population as is practicable among Senate Districts. Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); Kirkpatrick v. Preisler, 394 U.S. 526, 89 S.Ct. 1225, 22 L.Ed.2d 519 (1969).

■ 10. The issue of political gerrymandering at least in single-member districting, such as in the apportioning of the Oklahoma State Senate is non-justiciable. Wells v. Rockefeller, 398 U.S. 901, 90 S.Ct. 1696, 26 L.Ed.2d 60 (1970), affirming 311 F.Supp. 48 (S.D.N.Y. 1970); W.M.C.A., Inc. v. Lomenzo, 238 F.Supp. 916, at 925 (S.D.N.Y.1965), aff'd 382 U.S. 4, 86 S.Ct. 24, 15 L.Ed.2d 2 (1965); Sincock v. Gately, 262 F.Supp. 739 (D.C.Del.1967); Kilgarlin v. Martin, 386 U.S. 120, 87 S.Ct. 820, 17 L.Ed.2d 771 (1967); Sims v. Baggett, 247 F. Supp. 96 (D.C.Ala.1965); and Cousins v. City Council of Chicago, 322 F.Supp. 428 (N.D.Ill.1971), at page 434. (See also Special Comment, infra).

■ 11. The State Senate Apportionment Act of 1971 satisfies the Equal Protection Clause of the Fourteenth Amendment and the Fifteenth Amendment to the Constitution of the United States as to the requirement that each State Senatorial District be as nearly of equal population as is practicable. Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); Kirkpatrick v. Preisler, 394 U.S. 526, 89 S.Ct. 1225, 22

L.Ed.2d 519 (1969); Swann v. Adams, 385 U.S. 440, 87 S.Ct. 569, 17 L.Ed.2d 501 (1967); Sims v. Amos, 336 F.Supp. 924 (M.D.Ala.1972); Avery v. Midland County, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968); Thigpen v. Myers, 211 F.Supp. 826 (D.Wash.1962); Sincock v. Duffy, 215 F.Supp. 169 (D.Del. 1963); Davis v. Synhorst, 217 F.Supp. 492 (D.Iowa, 1963); Butterworth v. Dempsey, 229 F.Supp. 754 (D.Conn. 1964); Calkins v. Hare, 228 F.Supp. 824 (D.Mich.1964); Meeks v. Anderson, 229 F.Supp. 271 (D.Kan.1964); Drew v. Scranton, 229 F.Supp. 310 (D.Pa.1964); Bush v. Martin, 224 F.Supp. 499 (N.D. Tex.1963); Long v. Avery, 251 F.Supp. 541 (D.Kan.1965); Driggers v. Gallion, 308 F.Supp. 632 (M.D.Ala.1969); Klahr v. Williams, 303 F.Supp. 224 (D.Ariz. 1969); Wells v. Rockefeller, 311 F.Supp. 48 (S.D.N.Y.1970); Dinis v. Volpe, 264 F.Supp. 425 (D.Mass.1967); Grills v. Branigin, 255 F.Supp. 155 (D.C.Ind. 1966); Klahr v. Williams, 313 F.Supp. 148 (D.Ariz.1970); Sims v. Baggett, 247 F.Supp. 96 (M.D.Ala.1965); W.M.C.A. Inc. v. Lomenzo, 238 F.Supp. 916 (S.D. N.Y.1965); Whitcomb v. Chavis, 403 U.S. 124, 91 S.Ct. 1858, 29 L.Ed.2d 363 (1971).

12. Plaintiffs claim that it is constitutionally essential to create a single State Senate District in Tulsa County in which Negro citizens constitute a clear majority is not supported by fact or law. Wright v. Rockefeller, 376 U.S. 52, 84 S.Ct. 603, 11 L.Ed.2d 512 (1964); Mann v. Davis, 245 F.Supp. 241 (E.D.Va. 1965); Wells v. Rockefeller, 311 F.Supp. 48 (S.D.N.Y.1970); Whitcomb v. Chavis, 403 U.S. 124, 91 S.Ct. 1858, 29 L.Ed.2d 363 (1971); Skolnik v. Mayor and City Council of Chicago, 319 F.Supp. 1219 (N.D.Ill.1970); Cousins v. City Council of Chicago, 322 F.Supp. 428 (D.C.Ill. 1971); and Kilgarlin v. Martin, 252 F. Supp. 404 (D.C.Tex.1965).

If the Legislature were constitutionally mandated to be other than colorblind in this area what about the Indians and other minority groups? Furthermore, if a district be carved especially for the blacks (permissible but not required) who can say that it will long remain thus? We judicially notice that through changes in housing patterns, urban renewal, slum clearance, public housing and other factors the minority races are on the move in more ways than one.

13. One feature of the complaint filed by the plaintiffs is a plea for apportionment of State Senatorial Districts in Tulsa County according to race. Such a color conscious approach to apportionment is but another form of racial segregation and is constitutionally impermissible. Wright v. Rockefeller, 376 U.S. 52, 84 S.Ct. 603, 11 L.Ed.2d 512 (1964); Skolnik v. Mayor and City Council of Chicago, 319 F.Supp. 1219 (N.D.Ill. 1970); Cousins v. City Council of Chicago, 322 F.Supp. 428 (N.D.Ill.1971); Owens v. School Committee of Boston, 304 F.Supp. 1327 (D.Mass.1969); and Whitcomb v. Chavis, 403 U.S. 124, 91 S.Ct. 1858, 29 L.Ed.2d 363 (1971).

14. The claim of plaintiffs that the Act is constitutionally infirm because of "exclusivity" is not supported by facts. The "uncontested facts" portion of the pretrial order shows an agreement between the parties "That the act of the Legislature apportioning the Senatorial Districts was duly and regularly passed by the Legislature and signed by the Governor in accordance with law."

## SPECIAL COMMENT

Since plaintiffs have focused heavy emphasis upon same we feel compelled to make some separate mention relative to new Senate District No. 47 comprising parts of Oklahoma, Canadian and Logan Counties. This district is extremely odd shaped and we are not prepared to accept the testimony of the Chairman of the Senate Committee on Constitutional Revision and Redistricting concerning its creation. He testified that the district was brought about

by first carving out the other nine Senatorial Districts in Oklahoma County with the balance of Oklahoma County then being placed into the tenth district (Senate District No. 47) and in order to have sufficient population therein areas were added thereto from Canadian and Logan Counties. We note that areas were previously borrowed from Cleveland County to add to Senate District No. 43 and that an area was taken from Canadian County to add to Senate District No. 45, both in Oklahoma County. Further, we note that the only two Republican senators from Oklahoma County both live in present District No. 47. It is certain that one of these Republican senators will be eliminated at the next election and from the knowledge we have of the make-up of District No. 47 it is possible that a Democrat might be elected because the traditionally Republican areas of Nichols Hills, Quail Creek, The Village and Lakehurst Addition now have thrown with them traditionally Democratic areas especially the black community in the East and Northeast sectors of Oklahoma County. We recognize that some districts are going to be irregularly shaped when Enumeration Districts and Block Groups are used and almost precise population balance is obtained and we commend the Legislature in its difficult task of achieving population equality, but we cannot help but believe that the Legislators could have done a better "compactness" job with regard to District No. 47 and are inclined to believe that partisan considerations entered into the shaping of this district. But even so, we hastily add that this Court must accept at least a share of the blame for permitting it to happen because in Reynolds v. State Election Board, 233 F.Supp. 323 at page 329 this Court specifically struck down as being unconstitutional those parts of Article V Section 9A of the Oklahoma Constitution which allowed the Legislature in apportioning the State Senate to give consideration to "compactness, area, political units, historical precedents, economic and political interests, contiguous

territory, and other major factors, to the extent feasible." In *Reynolds* this court was faced with a recalcitrant Legislature that attempted time and again to set up these secondary criteria (compactness, etc.) to justify a departure from the one man—one vote rule. Faced with those repeated attempts, and in order to do needed justice, this court in *Reynolds* correctly said that population must always be the paramount consideration. It was through inadvertence that the remainder of 9A was declared null and void.

We hereby correct that oversight and breathe new life into Section 9A so that in the future the Legislature may not completely and entirely disregard compactness, area, political units, historical precedents, economic and political interests, contiguous territory, and other major factors in subsequent redistricting so long as *population* is given primacy.

Despite our dim view of the jig-saw shape of Senate District No. 47, and our belief that political considerations brought it into being there is no doubt in our minds that we are powerless to do anything about it. In Wells v. Rockefeller, D.C., 311 F.Supp. 48 aff'd in 398 U.S. 901, 90 S.Ct. 1696, 26 L.Ed.2d 60 and quoting from Jones v. Falcey, 48 N.J. 25, 222 A.2d 101, the Court said:

"* * * it would seem impossible for a court to pass upon the validity of political interests without itself making a political judgment or appearing to do so. For these reasons the view generally taken in this new area of judicial activity is that, if the mathematics are acceptable, it rests with the voters, rather than the Court, to review the soundness of the partisan decisions which may inhere in the lines the Legislature drew."

Further, in *Wells*, the Court said:

"The function of fixing district lines is, and should be, for the Legislature. Only when their handiwork is violative of fundamental constitutional rights should the courts interfere. This leg-

islative prerogative is just as constitutional, if not more so, as equal representation, if proper respect for the division of powers between the executive, legislative and judiciary branches of government is to be maintained. By way of illustration, were we to accept plaintiff's proposal to reject the lines which split the cities of Albany and Syracuse thereby improving the chances of incumbent Congressmen of the Democratic party in forthcoming elections, we would indeed be entering the "political thicket" and would be subject to charges of judicial political gerrymandering."

Also, in Cousins v. City Council of Chicago, 322 F.Supp. 428, the following appears: "The issue of political gerrymandering—at least in single-member representative districting, such as in the apportioning of the wards of Chicago— is non-justiciable."

For the foregoing reasons the relief sought by plaintiffs is in all things denied.

McWILLIAMS, Circuit Judge (specially concurring).

I generally concur in the foregoing Memorandum Opinion, although I see no need for us to "correct" or otherwise explain Reynolds v. State Election Board, 233 F.Supp. 323 (W.D.Okl.1964). At the same time I do agree that the United States Constitution permits consideration of the requirements of a state constitution concerning such factors as compactness, contiguity, historical precedent, and the like, so long as such does not impinge upon the overriding requirement of numerical equality prescribed by the Fourteenth Amendment. Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); Swann v. Adams, 385 U.S. 440, 87 S.Ct. 569, 17 L.Ed.2d 501 (1967); and Kirkpatrick v. Preisler, 394 U.S. 526, 89 S.Ct. 1225, 22 L.Ed.2d 519 (1969).